**AIROLITE CO. et al. v. FIEDLER.**
No. 155.

Circuit Court of Appeals, Second Circuit.
Jan. 31, 1945.

---

[3] 26 U.S.C.A. Int.Rev.Code, § 114(b) (3).

[4] Sneed v. Commissioner, supra; Sec. 19.23(m)-1(i) of Treasury Regulations 103.

Frederick P. Warfield, of New York City (G. H. Braddock, of Minneapolis, Minn., of counsel), for plaintiffs-appellees.

Gluck & Breitenfeld, of New York City (Frederick Breitenfeld, of New York City, of counsel), for defendant.

Before CHASE, CLARK, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The plaintiffs, The Ventilouvre Company, Inc., a Connecticut corporation, being the wholly owned subsidiary and sales agent of The Airolite Company, an Ohio Corporation, sued the defendant, a resident of New York, for unfair competition and for the infringement of U. S. Pat. No. 1,722,059 which was granted on July 23, 1929, to Andrew L. Riker for a ventilator and which is now owned by The Airolite Company.

The defendant answered by denying both unfair competition and patent infringement and added a counterclaim for a declaratory judgment holding the patent invalid. The patent claims were held not infringed and the complaint and counterclaim were dismissed. The defendant was held to have competed unfairly with the plaintiffs by placing in his catalogue drawings of ventilators called herein Plans 502, 503 and 527 and was perpetually enjoined from so doing or in any way using them as a sales or advertising medium. All the parties appealed.

### Unfair Competition.

The plaintiffs make and sell ventilators in varying sizes as desired by their customers. They are frames fitted with louvers which usually may be adjusted to permit the passage through them of more or less air while preventing the passage of light. Such ventilators are often used in doors to take the place of transoms, though that is only one instance of their widespread use. The plaintiffs have been supplying such ventilators for use in hotels, hospitals, homes, theatres, ships, office and factory buildings, and other structures since 1926 and have built up a sizeable business. Since the decided expansion of the navy following the outbreak of the war they have been consulted by naval officers and architects in regard to the designing of suitable ventilators, some with stationary and some with adjustable louvers, which have been adopted by the navy and which they have supplied for use in naval vessels of the United States. The defendant makes and sells similar and also identical ventilators, having become a manufacturer of them following a period of acting only as an agent for the sale of ventilators made by others.

The circumstances which led to the bringing of this suit may be stated as follows: The plaintiffs prepared and submitted to the navy drawings of ventilators which the navy put into its own specifications for vessels to be built for it. The Ingalls Shipbuilding Corporation, having contracted to build certain naval vessels equipped with the ventilators of three of the drawings made by the plaintiffs, purchased the ventilators of the defendant who then included in his own catalogue what are called in the record Plans 502, 503, and 527 which are drawings accurately depicting the ventilators thus supplied. The use of such drawings by the defendant in its own catalogue is the act of unfair competition found and enjoined by the trial court.

That action was taken on the basis of findings which are now quoted in full in so far as they relate in any way to the subject of unfair competition.

"2. The defendant appropriated and published in his catalogue three plans of the plaintiffs which he found in Navy specifications. He recognized that the work in the shipyards was Navy work. The uncontradicted evidence of the plaintiff shows and I find as a fact that the form and certain characteristics of the plans marked them as the plaintiffs' and that the trade would recognize them as originating with either of the plaintiffs who are both well known in the trade. I further find that plaintiffs' contribution of the plan to the United States Navy was for the specific purpose of war and was not intended to and did not constitute a relinquishment of its rights thereto and therein.

"3. Whether or not the defendant, at the time of his appropriation of the plans, had reason to know that they were the work of the draftsmen of both or either of the plaintiffs, he knows it now and, as indicated by his defense and his testimony, he intends to insist on publishing the plans in his catalog. This will constitute a continuing tort which the Court will enjoin. Although not more than nominal damage to date has been cogently or satisfactorily proved, the probability of the damage in the future appears and is found as a fact.

"4. The defendant deliberately appropriated plans which he knew were designed and originated by someone else. Even though he might have manufactured the article, if and when its manufacture was proposed to him, the reckless appropriation by him of another's plan and design as an advertising medium was a wrong to that other. He indulged himself in ingenious constructions of the interrogatories and, although he admitted on the stand that he knew their purpose, he served answers that were disingenuous and misleading. These acts, coupled with the manner and matter of his testimony, constitutes unclean hands."

Had these drawings of the plaintiffs so "appropriated" been copyrighted we will assume, arguendo, that their use by the defendant would have been a legal wrong to the plaintiffs but that kind of a tort has not been proved since there was no copyright. What then could be the legal wrong to the plaintiffs if the defendant did publish their uncopyrighted plans in his own catalogue to show to prospective customers the details of ventilators he was willing and able to supply to them? They were ventilators anyone was free to make or sell, and having the lawful right to do that the defendant was likewise free to show them by drawings or otherwise in his catalogue or elsewhere. The plaintiffs have not been legally wronged by the defendant's use of drawings which he had as much right to use as they did even though his drawings are exact copies of their own. James Heddon's Sons v. Millsite Steel & Wire Works, 6 Cir., 128 F.2d 6.

Moreover, there was nothing about these drawings to indicate the plaintiffs as the source of them except the fact that they were accurate drawings of articles known to the trade to be manufactured and sold by the plaintiffs. The articles were represented by the defendant in his catalogue, however, to be his own product, as indeed they were and lawfully might be. This method of marketing gave notice to prospective purchasers that what the defendant thus offered to sell was his own product and was enough to preclude any possibility that he would or could by means of the drawings palm off his ventilators for those of the plaintiffs. Electric Auto-Lite Co. v. P. & D. Mfg. Co., 2 Cir., 109 F.2d 566. Palming off, or the fair likelihood of it, which is the gist of a cause of action for unfair competition was not shown merely by the copying of the uncopyrighted drawings the plaintiffs had made but had no exclusive right to use. Such copying is not unfair competition unless the drawings had acquired a secondary meaning which marked the product they depicted as that of the plaintiffs in such a way that what the defendant sold would be bought as the goods of the plaintiffs. As was said in Lewis v. Vendome Bags, 2 Cir., 108 F.2d 16, 18: "The essence of the wrong of unfair competition is selling the goods of one manufacturer or vendor as those of another, and unless the defendant passes off its goods as those of the plaintiff the action fails. * * * Merely copying an article unprotected by patent, copyright or trade-mark does not establish unfair competition, unless the article or its design has acquired a secondary meaning." There was no finding of a secondary meaning and no proof upon which one could have been based. The nearest approach to such a finding is that: "I find as a

fact that the form and certain characteristics of the plans marked them as the plaintiffs' and that the trade would recognize them as originating with either of the plaintiffs who are both well known in the trade." But this falls far short of what was needed to support the judgment. The defendant sold ventilators, not plans. At the most all he did was to sell ventilators represented as his own in his own catalogue but illustrated by means of plans the trade would recognize as being plans made by the plaintiffs. We do not stop to consider whether, as the appellant contends, this finding lacked adequate support in the evidence for, if pushed to its extreme, it shows no more than that the defendant represented that he made and sold ventilators which were built according to the plans of the plaintiffs as he had the lawful right to do.

### Patent Infringement.

The patent relates to an improved ventilator of the general nature of those described in prior patents No. 1,519,553, 1,-529,037, and 1,666,218 granted to Riker for use in transoms, doorways, windows, panels or the like and is made with a frame in which are placed a plurality of moveable louvers which are designed to prevent the passage of light and permit the passage of air when the louvers are wholly or partly open. Such ventilators are old in the art and have long been made with stationary or moveable louvers or both. The louvers were either flat or V-shaped or Z-shaped as desired. The supposedly advantageous features of the ventilator of the patent in suit are found in the operating mechanism and in the frame which is of flanged metal plates whose flanges extend inwardly from the side members and outwardly from the top and bottom members. They are principally the interlapping of the ends of the louvers when they are in closed position with flanges on the side members of the frame, the closure of the end spaces in the frame by having the outermost louvers when closed come into direct engagement with the plates of the frame adjacent to the end spaces, the inward deflection of the ends of the top and bottom members to permit them to fit inside the inwardly projecting flanges of the side members where they rest against the inside of those flanges in a position which brings the outer faces of adjacent flanges of the frame flush with each other, and an easily operated mechanism for opening and closing the louvers.

Both the claims in suit embody the inward deflection of the ends of the top and bottom members to fit between the flanges of the other members. The defendant does not do that in the butt-welded construction it employs and so the finding of non-infringement was clearly right.

This is an instance, however, where all the claims of the patent are so clearly invalid that they should have been so held in accordance with the prayer of the counterclaim. Both the first two claims which are directed to the structure of the frame and the last two covering the mechanism for operating the louvers deal only with minor changes from the prior art which were plainly so obvious and within the skill of an ordinary designer of the well known louver type ventilator that there was no invention in making them. The plaintiff failed to introduce any evidence of invention to support the presumption flowing from the grant of the patent and that was overcome decisively by the defendant's evidence.

As to the invalidity of claims 1 and 2 there is little need to go further into the prior art than to the patentee's previous patent No. 1,519,553 over which the patent in suit was said in the specifications to be an improvement. There we find disclosed all the claimed novel features of the patent in suit except the change from flanges all directed inwardly to the direction outwardly of the flanges on two of the members. That this little change required no invention is, if not otherwise obvious, made plain by the fact that in the old patent granted to Hayes, No. 335,353, the frame pieces had flanges directed outwardly. See also No. 1,496,378 granted to Reichardt where outwardly directed flanges are shown.

Claims 3 and 4 covering the operating mechanism differ in substance only in that the construction of three has "a metal plate having flanges, louvers having ears pivotally supported upon and spaced from said plate" while that of four is made with "spaced apart metal plates having flanges, louvers having ears pivotally supported in the plates between the flanges, the ears being spaced from one of said plates." As a practical matter there is probably no difference since it may be supposed that the louvers will in use be

supported by a frame piece at each end. However that may be, the operating mechanism is the same and the claims stand alike in so far as they cover any invention. This mechanism consists of a lever extending outside the frame which when manually moved pushes a bar up or down. This bar is attached to the louvers so that they pivot to open or close as it moves. Such a construction is old as is shown in the following patents: No. 141,841 granted to Weld, No. 1,519,553 to Riker, and No. 1,583,597 to Lafferty. The only feature not found in the above patents is an offset portion on the level between a louver ear and the plate to provide for an opening through which the operating bar extends. This apparently makes it more certain that the lever will engage the operating bar to insure pivoting. But even if it does have that effect it is an old way to bring it about. See Boeck's Patent No. 688,288 and No. 967,095 granted to Wenink. None of these four claims cover any changes which rise to the level of invention and they all are invalid for that reason. Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Picard v. United Aircraft Corp., 2 Cir., 128 F.2d 632.

Judgment for the defendant in the cause of action for patent infringement affirmed both for lack of infringement and for invalidity and cause remanded with directions to enter judgment for the defendant on his counterclaim.

Judgment for the plaintiffs in the cause of action for unfair competition reversed and complaint dismissed with costs.