Clarence L. NEELY, and Neely Manufacturing Co., Inc., Plaintiffs,

v.

BOLAND MANUFACTURING COMPANY, Defendant.

Civ. No. 587.

United States District Court
D. Minnesota,
First Division.

Sept. 25, 1958.

**774**

Donald H. Zarley, Talbert Dick, Des Moines, Iowa, Sawyer, Sawyer & Darby, Winona, Minn., for plaintiffs.

Charles B. Cannon, Chicago, Ill., George Brehmer & McMahon, Winona, Minn., for defendant.

DEVITT, District Judge.

Plaintiff, an Iowa corporation, brings suit for an injunction and accounting against the defendant, an Illinois corporation doing business in the State of Minnesota, alleging trade mark infringement and unfair competition.

Plaintiff is engaged in the business of manufacturing and selling plastic garment cover bags. In 1948, the individual plaintiff filed a petition with the United States Patent Office claiming to be the inventor of an improved type of garment bag. This envelope-like plastic bag was designed with a zipper opening extending diagonally from the top center to the lower left-hand corner of the bag. The patent examiner denied plaintiff's petition on the ground that the zipper arrangement was not distinctive enough to warrant the issuance of a patent. The decision was affirmed on appeal by the Court of Customs and Patent Appeals. Application of Neely, 1953, 205 F.2d 195, 40 CCPA, 1061.

For some years prior to the time the defendant began competing for the garment bag trade, the plaintiff used the registered trade marks "Jiffy", "Jiffy by Neely", and "Kat-E-Korner Zipper" as identifying features on all their products. In 1956, plaintiff attempted to register, as a design trade mark, an illustration of a suit suspended from a coat hanger and partially inserted within a garment bag. This design trade mark, like the patent application, was rejected by the patent office. In 1958, pursuant to 15 U.S.C.A. § 1092, the rejected application was amended to convert it to the Supplemental Register. The patent office has deferred action on its registration pending decision in this action.

The defendant has been engaged in the business of manufacturing and selling plastic rain wear for several years. In 1955 it expanded its operation and line of products to include plastic-type gar-

ment bags identical to those manufactured and sold by the plaintiff.

Plaintiff's allegations of trade mark infringement are grounded on the fact that the defendant is using the terms "Kwik-Zip" and "Diagonal Zipper" on its merchandise and is using a garment bag illustration on its packaging in all respects similar to that used by the plaintiff. In charging unfair competition, the plaintiff alleges that the defendant by "its studied copy of the non-functional features of plaintiff's goods, packaging and advertising", is palming off its goods as those of the plaintiff. In addition, it charges that the defendant has been unjustly enriched because one of plaintiff's former salesmen, who was also employed by the defendant to handle its rain wear, turned over to defendant trade secrets and confidential customer lists, acquired while he was employed by the plaintiff.

The defendant denies trade mark infringement and unfair competition, and alleges that since the garment bag design is unprotected by a patent he, as well as the public at large, is entitled to imitate it in all particulars so long as he takes the necessary precautions to avoid confusing and misleading the purchasing public. It further claims the "Jiffy" mark has been abandoned.

The evidence at trial leaves little doubt that the garment bag manufactured and sold by the defendant is almost an exact duplicate of the plaintiff's and is packaged in a similar carton.

■ The law applicable in this situation is well settled in this Circuit. The test to be applied in determining whether confusing trade marks exist was established in Seven Up Co. v. Cheer Up Sales Co., 8 Cir., 1945, 148 F.2d 909, 911, certiorari denied 326 U.S. 727, 66 S.Ct. 32, 90 L.Ed. 431, where it was said:

"* * * the test of deceptive similarity is whether ordinary purchasers, buying under the usual conditions in the trade and exercising ordinary care, would likely be induced to purchase the article to which the accused trade-mark is af-

fixed, believing it to be the plaintiff's article. [Citing cases] This test must be applied by comparing and contrasting the accused trade mark with the purchaser's assumed memory of the plaintiff's trade marks. [Citing cases] In thus testing the memory of the ordinary careful purchaser, the court must consider the appearance of the two trade-marks as to form and color and their similarity or differences in sound or meaning when pronounced. [Citing case.]"

■ Applying this test to the evidence, I am satisfied that there is no infringement. Certainly, a comparison of the marks shows marked auditory dissimilarities. They neither sound alike nor are spelled the same. Nor are they alike in appearance. A juxtaposition of the cartons bearing the marks reveals that the type script used by the defendant in setting up his mark is noticeably different. Also, in printing his mark, the defendant used black ink in comparison to the blue ink used by the plaintiff. The only real similarity between the plaintiff's and defendant's marks is in meaning. Both "Jiffy" and "Kwik-Zip" imply doing something quickly or speedily. Similarly, "Kat-E-Korner" and "Diagonal Zipper" are intended to designate the position in which the zipper is placed on the garment bag. All of the marks are descriptive. An examination of the cases reflects the reluctance of the courts to allow exclusive appropriation of marks which are merely descriptive of a product or its functions. The following marks have been held to be merely descriptive of the goods to which they apply: "EZ-Flo" as applied to insecticide dusts administered by spraying, Application of Diamond Fertilizer Co., 1953, 203 F.2d 767, 40 CCPA, 908; "Fastie" as applied to a tube fastening machine used for the purpose of applying fasteners to flexible ends of tubes such as sausage casings, Application of Hercules Fasteners, 1953, 203 F.2d 753, 40 CCPA, 944; "Pro-Tek-Tiv" as applied to shoes, Curtis-Stephens-Embry Co. v. Pro-Tek-

Toe Skate Stop Co., 8 Cir., 1952, 199 F.2d 407; "Safe-T-Seal" as applied to envelopes, In re Alvah Bushnell Co., 1919, 49 App.D.C. 133, 261 F. 1013; "Wornova" and "Slipova" as applied to garments, Wornova Mfg. Co. v. McCawley and Co., 2 Cir., 1926, 11 F.2d 465. Since the "Jiffy" and "Kat-E-Korner" marks fall within the classification of descriptive marks not subject to exclusive appropriation, and the evidence does not sustain a finding that the ordinary purchaser was likely to confuse one mark for the other, there is no infringement. See Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

■ We next discuss whether the defendant has been guilty of competing unfairly with the plaintiff. Since the allegations of diversity of citizenship and amount in controversy also are made out in the complaint, the Court has jurisdiction to determine the issue independently of the registration of trade marks.

■ A party cannot be deemed to be competing unfairly merely because he copies an unpatented design or has adopted a dress for his goods similar to that of his competitor. General Time Instrument Corp. v. United States Time Corp., 2 Cir., 1948, 165 F.2d 853, certiorari denied 334 U.S. 846, 68 S.Ct. 1515, 92 L. Ed. 1770. In order to recover, the plaintiff must show that the defendant is confusing the purchasing public and palming off its goods as those of the plaintiff. J. C. Penney Co. v. H. D. Lee Mercantile Co., 8 Cir., 1941, 120 F.2d 949; 52 Am. Jur., Trademarks, Tradenames, etc., § 86.

■ The doctrine of confusion would seem to imply that if the article copied is identical to the original article, the public not being able to distinguish between the articles, is confused. This, however, as was stated in West Point Mfg. Co. v. Detroit Stamping Co., 6 Cir., 1955, 222 F.2d 581, 589, certiorari denied 350 U.S. 840, 76 S.Ct. 80, 100 L.Ed. 749, is not the law:

"The confusion for which the copier is held responsible, under the law of unfair competition, is not confusion resulting from the inability on the part of the public to distinguish between similar articles, one of which has been copied from the other. It is rather confusion as to origin, not of goods, which controls on the question of unfair competition; and it is only if there is such relationship or analogy between the goods of a complainant and those of a defendant that ordinary retail purchasers are likely to be deceived as to the origin that there is, in law, unfair competition."

■ In Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 1943, 133 F.2d 266, 270, the rule was stated more simply. The Court observed:

"To acquire a secondary meaning in the minds of the buying public, an article of merchandise when shown to a prospective customer must prompt the affirmation, 'That is the article I want because I know its source,' and not the negative inquiry as to 'Who makes that article?' In other words, the article must proclaim its identification with its source, and not simply stimulate inquiry about it. [Citing Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73]"

The evidence at trial did not disclose any instance where persons purchased the defendant's bag because of its design or packaging believing it to be the product of the plaintiff. Nor would the evidence sustain a finding that the non-functional features, alleged to exist by the plaintiff, identified him as the source of the product. Most of the testimony of the witnesses tended merely to establish a purchaser interest in obtaining a garment bag, at the most advantageous price, without concern for the manufacturing source. In fact, one witness, Merle Munson, who operated a retail store handling the plaintiff's bags, frankly admitted that although he had sold the defendant's bags believing them to be the

plaintiff's, the general purchaser did not associate plastic garment bags, per se, with the Neely Corporation.

Plaintiff contends that their large expenditures for advertising and the *distinct method employed for packaging* and dressing its goods compel a conclusion that the necessary secondary meaning was accomplished. It is true that the plaintiff expended money in advertising its product. Doubtless the advertising expenditures were a factor in acquainting the public with the Neely bag and in opening a market for it. But, as was said in J. C. Penney Co. v. H. D. Lee Mercantile Co., supra, 120 F.2d at page 955:

"[T]hese expenditures could not purchase for plaintiff the equivalent of a patent monopoly, nor operate to deprive the public of the right to competitive production in a field of functional values."

An examination of the packaging of the parties reveals that the dress adopted by the defendant is quite similar to that used by the plaintiff. But this alone would not warrant a conclusion that defendant is competing unfairly. The most common and effective means of apprising intending purchasers of the source of goods is a prominent disclosure on the package of the manufacturer's name. The defendant complied with this requirement. There is no basis for the claim of unfair competition. See Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 16 S.Ct. 1002, 41 L.Ed. 118; J. C. Penney Co. v. H. D. Lee Mercantile Co., supra; Winston & Newell Co. v. Piggly-Wiggly Northwest, Inc., 1946, 221 Minn. 287, 294, 22 N.W.2d 11.

Plaintiff cites Wesson v. Galef, D.C. S.D.N.Y.1922, 286 F. 621, as sustaining its contention that the exact copying of the features of the plaintiff's garment bag and packaging resulted in unfair competition. That and the instant case are clearly distinguishable. There, the evidence clearly established that the famous Smith & Wesson revolver was a by-word among gun enthusiasts, sports-men and policemen. The revolver had many distinguishing features which had made it known to the public as the product of the manufacturer of those guns. In the instant case there is no evidence to support a similar finding.

Suffice it to say, without taking up the question in detail, that the plaintiff's claim that the defendant had acquired trade secrets and was unjustly enriched by the activities of its former salesman, was not sustained by the evidence.

Defendant will please prepare findings of fact (embodying only the essential ultimate facts), conclusions of law, order for judgment and form of judgment in conformance with this memorandum, with copies to plaintiff.