**MUTATION MINK BREEDERS ASSO-CIATION and Landon Mink Ranch, Inc., Plaintiffs,**

v.

**LOU NIERENBERG CORP., Normink Ltd. and Canadian Fur Trappers Corp., Defendants.**

United States District Court
S. D. New York.

Jan. 28, 1959.

Nims, Martin, Halliday, Whitman & Williamson, New York City, for plaintiffs, Wallace H. Martin, Oliver P. Howes, Jr., New York City, of counsel.

Amster & Levy, New York City, for defendants.

FREDERICK van PELT BRYAN, District Judge.

This is an action for unfair competition and under § 43(a) of the Lanham Trade-Mark Act of 1946, 15 U.S.C.A. § 1125, seeking an injunction, damages and an accounting of profits.

The suit is brought on behalf of the plaintiffs, and, in terms of a class action, on behalf of each of the members of plaintiff Mutation Mink Breeders Association and all other persons similarly situated.

Defendants have moved in the alternative (1) to dismiss the complaint, pursuant to Rule 12(b)(6), F.R.Civ.P., 28 U.S.C.A., for failure to state a claim upon which relief can be granted, (2) for summary judgment pursuant to Rule 56, F.R.Civ.P., and (3) to strike from the complaint all allegations relating to "all other persons similarly situated" on the ground that this suit may not properly be maintained as a class action.

Plaintiff Mutation Mink Breeders Association is a trade organization with a membership of over five thousand mink breeders throughout the United States. Plaintiff Landon Mink Ranch, Inc. is a breeder of mink and a member of the Association. Both are Wisconsin corporations.

Defendant Normink Ltd., a New York corporation, is engaged in the business of blending and finishing fabrics which are designed to simulate mink in appearance and use. Defendant Lou Nierenberg Corp., a New York corporation, is a manufacturer of ladies' garments composed of synthetic textile fabrics. It obtains its fabrics from Normink Ltd. and sells the finished garments to wholesalers, retailers and specialty shops, including the defendant Canadian Fur Trappers Corp., a New York corporation. The latter is engaged in the retail sale of fur coats and fur pieces and other merchandise in the apparel field, as well as the simulated mink garments which it purchases from Lou Nierenberg Corp.

The complaint charges that defendants affix the term "Normink" to their synthetic mink garments and that this term is a false description and representation concerning them; that they have described their garments with such words and phrases as "platinum", "hand-tailored by craftsmen furriers", and "the warmth and beauty of mink"; and that they have used words and phrases like "Canadian", "Canadian Fur Corporation" and "Canadian Fur Trappers Corp." in connection with the sale of such garments as well as other words and phrases calculated to create the false impression that the garments are made of mink fur or have the characteristics of mink fur.

It is alleged that in so describing and advertising their garments defendants are likely to deceive the public which is likely to purchase defendants' products in the belief that these products are mink or contain mink. It is also alleged that defendants' acts are likely to produce an adverse effect on the high standing and reputation of mink products generally and that it is likely that these acts will

dilute and reduce the public confidence in mink garments and will divert customers from the products of the plaintiffs and of mink breeders similarly situated and destroy plaintiffs' good will to their irreparable damage and that of all others similarly situated.

It is claimed that as a result of this course of conduct defendants have made substantial profits to which they are not entitled and for which they must account, and that they are also liable in damages to the plaintiffs. Plaintiffs also seek an injunction against the continuance of the acts complained of and the commission of any acts or the making of any representations calculated to create the false impression that defendants' goods are made of mink fur or contain mink products.

Defendants contend that the plaintiffs have no exclusive rights in the word "mink" or the other words and phrases used by defendants in the marketing and sale of their products which would entitle them to maintain this action. They claim that "mink" is a generic term which is used by the entire fur trade as a term indicating the fur pelt of the mink animal. They contend that plaintiff Association does not represent all the mink breeders in the United States and that it is not in competition with the defendants. It is said that the term "mink" has not acquired a secondary meaning and goods sold under that name are not associated in the public mind with the plaintiffs' fur goods.

Defendants further claim that the price differential between plaintiffs' and defendants' products is so substantial that it would be impossible for any reasonable person to be deceived into believing that coats selling for $39 to $59 are genuine mink coats since it is generally known that the selling price of genuine mink coats is $5,000 to $7,000. They say that any prospective purchaser of a mink coat would carefully examine the coat, would look at the label, would feel the texture of the material and would immediately realize that the de-

fendants' coats are not composed of true mink fur. The argument is that the public could not be deceived, that the high standing of mink products would be unaffected, and that no customers could be diverted from plaintiffs to defendants.

Defendants also argue that the action must fall because there is no showing that any of the named plaintiffs has lost or is likely to lose any trade as a result of defendants' acts. It is urged that, even assuming a diversion of trade will occur as a result of defendants' acts, it is impossible for plaintiffs to show that it is their trade rather than the trade of one of their competitors which will be diverted. They therefore urge that the so-called "single source" rule bars plaintiffs' recovery.

That rule is that, to maintain an action for unfair competition, it must appear that the public associated the "infringed" product with a "single source", even though anonymous, and the defendants' "palming off" would result in a diversion of plaintiffs' customers and that this could occur only if it were shown that plaintiffs monopolized the trade name or product in question. California Apparel Creators v. Wieder of California, 2 Cir., 162 F.2d 893; Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299; Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73; Mosler Safe Co. v. Ely-Norris Safe Co., 273 U.S. 132, 47 S.Ct. 314, 71 L.Ed. 578.

California Apparel Creators v. Wieder of California resembled the case at bar. There an incorporated California trade association and seventy-five of its members brought a class action on behalf of themselves and all other California apparel manufacturers to enjoin three New York defendants from using the word "California" as part of their trade names or in connection with the sale of apparel, seeking also an accounting and damages.

The court granted defendants' motion for summary judgment holding that to

carry a secondary meaning the origin must be from a single though anonymous source. (162 F.2d at page 897.) The fact that it would be impossible to determine which, if any, of the plaintiffs would be injured by defendants' acts was held to bar recovery under the "single source" rule. Relying upon Mosler Safe Co. v. Ely-Norris Safe Co., supra, the court, per Clark, J., said (162 F.2d at page 901):

"It is nowhere claimed that there is, or will be, available any proof of specific customers diverted from specific plaintiffs through the actions of these defendants. The only possible suggestion of injury is by a strained process of inference, as by the suggested conclusion that the general effect of defendants' actions must have diverted customers from the plaintiffs. Here we are met with the direct difficulty found insurmountable by Justice Holmes in the Ely-Norris Safe Co. case, that there is no reason to assume that defendants' customers, deceived as to the place of origin, would otherwise have bought of these plaintiffs * * *."

See, also, New York & R. Cement Co. v. Copley Cement Co., C.C.E.D.Pa., 44 F. 277, rehearing with memorandum C.C., 45 F. 212; American Washboard Co. v. Saginaw Mfg. Co., 6 Cir., 103 F. 281.

The California Apparel case casts grave doubt on whether plaintiffs have a claim for common law unfair competition here. However, it does not affect their claim under the Lanham Trade-Mark Act of 1946, which had been enacted prior to the California Apparel case, but did not become effective until after that case had been argued. As Judge Clark said (162 F.2d at page 900, note 12):

" * * * [T]he Lanham Trade-Mark Act of July 5, 1946, makes two important changes, in that it omits the requirement of willfullness or intent to deceive and extends the liability 'to a civil action' by 'any person who believes that he is or is likely to be damaged by the use of any such false description or representation.' § 43(a), 15 U.S.C.A. § 1125(a). This is not applicable here, since the Act did not become effective until July 5, 1947, after the argument of this appeal, and does not apply to pending cases, § 46(a). * * * As applied to a situation such as here disclosed, there is of course the necessity of proving that the apparel labels do designate the origin of the goods to the buyers, and there is the further problem as to the rather curious and ambiguous wording of the statute creating liability to an action * * * in favor of a quite indefinite number of volunteer plaintiffs. How far this may change the effect of the Ely-Norris Safe Co. case must therefore await further elucidation."

The California Apparel case, the Ely-Norris Safe Co. case and the other cases relied upon by defendants here were all based on common law principles of unfair competition. They are not, of course, controlling as to the claim which is alleged in the complaint under the Lanham Trade-Mark Act. Section 43(a) of that Act provides:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transport-

ed or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or *by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.*" (Emphasis added.)

In Gold Seal Co. v. Weeks, D.C.D.C., 129 F.Supp. 928, affirmed *sub nom* S. C. Johnson & Son, Inc. v. Gold Seal Co., 97 U.S.App.D.C. 282, 230 F.2d 832, certriorari denied 352 U.S. 829, 77 S.Ct. 41, 1 L.Ed.2d 50, plaintiff sought a decree authorizing the Commissioner of Patents to register as a lawful trademark the words "Glass Wax" which were used by plaintiff in connection with the sale of a liquid cleaner for glass and metals. S. C. Johnson & Son, Inc., a manufacturer of wax products, intervened, opposing the application for registration and counterclaiming for injunctive relief, profits and damages under § 43(a) of the Lanham Act, on the ground that "Glass Wax" did not contain wax and that the mark was therefore a false representation and description of the goods, causing Johnson damage or the likelihood of damage. While the court held that the evidence adduced at the trial was insufficient to support the counterclaim, its construction of § 43(a) is highly apposite here. The court stated, 129 F.Supp. at page 940:

"* * * Johnson * * * need not prove actual diversion of trade (palming off, so to speak), need not establish a veritable monopoly position in the industry * * *.

"We are satisfied that Johnson had adequate standing to assert its right to recover in a civil action under this section and was entitled to be heard and to present evidence. We are equally satisfied, however,

that Johnson has failed to prove that it is entitled to relief in the form of injunction, profits, damages or costs * * *."

■■ The Gold Seal case is closely analogous to the case at bar. In that case the defendant was accused of using the word "wax" to describe a product that did not contain wax. Here the defendants are charged with using the word "mink" or words tending to create the impression that their product is made of mink where, in fact, such is not the case. Both in the Gold Seal case, and here, the plaintiffs did not monopolize the industry and proof of actual diversion of trade was, therefore, in all practical respects, impossible. The Gold Seal case indicates that the "single source" rule is inapplicable to suits under § 43 (a) of the Lanham Act and that the "likely to be damaged" provision of § 43(a) obviates the necessity of proving actual diversion of trade. It follows that had such cases as Mosler Safe Co. v. Ely-Norris Safe Co., supra, and California Apparel Creators v. Wieder of California, supra, arisen under the Lanham Act, the result might not have been the same. For § 43(a) of the Lanham Act creates a new "federal statutory tort, *sui generis*" and does not merely codify the common law principles of unfair competition. Gold Seal Co. v. Weeks, supra, 129 F. Supp. at page 940; L'Aiglon Apparel Co., Inc. v. Lana Lobell, Inc., 3 Cir., 214 F.2d 649.

■ At the least the complaint at bar states a claim under the Lanham Act.

■ Defendants also urge that plaintiff Mutation Mink Breeders Association has no standing to sue relying on the California Apparel case. However, it appears from the complaint here that plaintiff Association has a pecuniary interest in preventing the diversion of trade from its members to the defendants since in return for its services to its members it receives a percentage of the

**162**

sales price of the pelts sold by them. Thus, the situation here is different from that in the California Apparel case where it was indicated that the plaintiff Association lacked standing to sue only because it did not itself have a direct pecuniary interest which might be affected by defendants' acts. See 162 F.2d at page 896. Cf. Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111.

■ The defendants' motion to dismiss the complaint will be denied.

■ Defendants' motion for summary judgment as to the Lanham Act claim must also be denied since there are numerous issues of fact which require a trial. See Arnstein v. Porter, 2 Cir., 154 F.2d 464; Doehler Metal Furniture Co. v. United States, 2 Cir., 149 F.2d 130.

■ The affidavits conflict as to whether the word "platinum" is peculiar to the fur trade; as to whether the plaintiffs' and defendants' goods are in competition with each other; as to the spread of price between certain of plaintiffs' garments and certain of defendants'; and the possibility of confusion as to the purchasing habits of women generally (which bears on the question of whether the public is likely to be deceived). The question of whether the public is likely to be deceived has been held an issue of fact, "depending on all the attendant circumstances". Federal Glass Co. v. Loshin, 2 Cir., 224 F.2d 100, 101.

■ Since the unfair competition claim is so "intertwined with another claim that must be tried * * *" that there will be no added expense or delay to defendants in leaving that claim open until trial, summary judgment will be denied as to that claim also in the exercise of my discretion. See 6 Moore, Federal Practice, 2165; Bernardo v. Bethlehem Steel Co., D.C.S.D.N.Y., 169 F. Supp. 914; Cf. Altman v. Curtiss-Wright Corp., 2 Cir., 124 F.2d 177, 180.

■ It remains to be decided whether the allegations of the complaint relating to maintenance of the suit as a class action must be stricken.

It seems plain that the suit may properly be maintained as a "spurious" class action under Rule 23(a)(3), F.R.Civ.P. The rule requires only that the character of the right sought to be enforced for or against the class be "several", that there be a "common question of law or fact" affecting the several rights, and that "common relief is sought".

The "spurious class suit" is merely a device for permissive joinder. California Apparel Creators v. Wieder of California, supra; 3 Moore, Federal Practice, 3442. It does not "grant authority to adjudicate finally rights as to nonappearing parties or to confer any additional substantive rights upon the plaintiffs suing". California Apparel Creators v. Wieder of California, supra, 162 F.2d at page 897; Oppenheimer v. F. J. Young & Co., 2 Cir., 144 F.2d 387; Nagler v. Admiral Corp., 2 Cir., 248 F.2d 319. It is an invitation to the members of the affected class to join in the action. If they do not so join they cannot be bound by the result. 3 Moore, Federal Practice, 3443; Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84; Nagler v. Admiral Corp., supra. The device is useful since it tolls the statute of limitations while absent plaintiffs decide whether or not to join in the action, and permits intervention without regard to diversity of citizenship or jurisdictional limitations. 3 Moore, Federal Practice, 3476, 3477; Hart & Wechsler, The Federal Courts and The Federal System, pp. 935, 936.

As the court said, in denying a similar motion to strike, in Nagler v. Admiral Corp., supra, 248 F.2d at page 327:

"* * * It is difficult to see what harm the allegations do, since they will serve no function if the invitation is accepted by no one. On the other hand, they may serve a helpful function in leading to the consideration of substantially similar problems all at once."

See, also, Oppenheimer v. F. J. Young & Co., supra; York v. Guaranty Trust Co., 2 Cir., 143 F.2d 503, reversed on other grounds 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079.

Defendants' motions are in all respects denied.

So ordered.