Johan Samuel ZANDELIN and International Designers Group., Inc.,
Plaintiffs,

v.

MAXWELL BENTLEY MFG. CO., Inc., and E. M. Stevens Corporation,
Defendants.

United States District Court
S. D. New York.
Sept. 26, 1961.

Shapiro & Hoeniger, New York City, Berthold H. Hoeniger, New York City, of counsel, for plaintiffs.

Golenbock & Barell, New York City, Michael R. Lemov, Leonard W. Wagman, New York City, of counsel, for defendants.

FREDERICK van PELT BRYAN, District Judge.

This is an action for alleged patent infringement, false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a), and unfair competition in which plaintiffs seek a permanent injunction and damages. Jurisdiction is based on 28 U.S.C. § 1338 (a) and (b).

Plaintiffs now move for an injunction pendente lite against continued alleged patent infringement, false designation of origin and unfair competition.

On October 25, 1960 United States Letters Patent were issued to plaintiff Zandelin, a subject and resident of Sweden, for a telephone subscriber's index. Zandelin has been manufacturing the device in Sweden for some time. Plaintiff, International Designers Group, Inc., a New York corporation (IDG), is the exclusive importer and distributor of the Zandelin telephone subscriber's index in the United States.

The index consists of a flat wooden case with a sliding plastic interior panel. The interior panel contains cards for each letter of the alphabet with spaces for listing telephone numbers. Each

letter of the alphabet is marked on a brass strip at the end of the wooden case and keys on the panel correspond to each letter. By pressing the key for a given letter and pulling out the interior sliding panel the card with the telephone numbers for that letter appears before the user. The device is designed to be placed under the base of a desk telephone so that the brass strip listing the letters of the alphabet and the keys extend beyond the base. It furnishes a simple and easy method of obtaining telephone numbers for handy reference.

This index, known as the "Phonette", has been extensively advertised by plaintiff IDG in newspapers, magazines and other media. IDG has purchased some $170,000 worth of "Phonettes" from Zandelin. Apparently the device has sold very well and in fact at times orders have exceeded available supply. The "Phonette" is carried by stores like Abercrombie & Fitch, Mark Cross, Hammacher Schlemmer, Bloomingdale's, Saks Fifth Avenue and Lord & Taylor, and sells for $11.95. IDG has done cooperative advertising of the "Phonette" with these and other stores.

Plaintiffs maintain that defendants Maxwell Bentley Mfg. Co., Inc. and E. M. Stevens, both New York corporations in the advertising specialty business, are having manufactured in Japan a cheap copy of the telephone index invented and patented by Zandelin which they are attempting to sell in the United States. Plaintiffs claim, as well, that defendants are using a photograph of the original "Phonette" to advertise the Japanese copy, which is called "Telodex", in their "World Line, Business Gifts 1961" catalogue. The "Telodex" device sells for considerably less than half of the price charged for "Phonette".

Cole, vice president of IDG, states in an affidavit that on April 17, 1961 a Berkeley, California, department store cancelled an order for several thousand dollars worth of "Phonettes" after seeing defendants' catalogue. He says, as well, that three IDG accounts in Chicago have informed him, after seeing defendants' catalogue advertising the cheap copy, that they will no longer purchase "Phonette", are now suspicious that IDG's entire line is overpriced and are considering dropping the whole line. An advertising specialty house with which IDG has done business has also indicated that it is no longer interested in "Phonette".

Plaintiffs maintain that their customers are under the impression, created by defendants' catalogue, that "Phonette" and "Telodex" are the same product which is being sold to favored customers at a lower price under the latter name. Defendants' conduct, they assert, is in violation of § 43(a) of the Lanham Trademark Act of 1946, 15 U.S.C.A. § 1125(a), and also amounts to the common-law tort of unfair competition.

Defendants do not deny that in December 1960 they purchased several "Phonettes", some of which were sent to the Japanese manufacturer who has subsequently been making "Telodex" for them. They maintain, however, that Zandelin's invention was not patentable, that the photograph in their catalogue is of their own product, and finally, that there is no unfair competition since the two indices are designed for different markets. They assert as well that plaintiffs have failed to establish any irreparable injury and are therefore not entitled to a preliminary injunction.

■ It is well established that a preliminary injunction will not issue for patent infringement unless the validity of the patent is clear and beyond question. Pacific Cage & Screen Co. v. Continental Cage Corporation, 9 Cir., 259 F.2d 87; Leavitt v. McBee Co., 1 Cir., 124 F.2d 938; Singer Manufacturing Co. v. Better Services Sewing Machine Co., Inc., D.C.S.D.N.Y., 131 F.Supp. 146. The issuance of letters patent, standing alone, is not sufficient to support such drastic relief. White et al. v. Leanore Frocks, Inc., 2 Cir., 120 F.2d 113.

■ Here there are questions as to the state of the prior art at the time the Zan-

delin patent was issued. Defendants claim that the Zandelin device amounts to nothing more than a rearranging of prior components. Plaintiffs, of course, deny this. Since telephone indices have been available to the public for years, there is a question as to whether plaintiffs' patent will stand the test of litigation. Plaintiffs' motion for an injunction pendente lite in so far as it is based on alleged patent infringement must be denied.

Turning next to the claim of unfair competition, it is obvious that "Telodex" is, in fact, a copy of "Phonette", as defendants scarcely bother to deny. The only discernible differences between the two products are in the grain of the wood, "Phonette's" grain being sharper, and in the brass plate on which the letters of the alphabet appear. The "Phonette" plate carries the word "Phonette" in one corner and "Patent" "Made in Sweden" in the other. There are also some differences in the form of the letters on the two brass strips.

■ It is well settled that in order to establish the common-law tort of unfair competition there must be more than imitation by one party of the product of another. American Safety Table Co. v. Schreiber, 2 Cir., 269 F.2d 255; National Welding Equipment Co. v. Hammon Precision Equipment Co., D.C.N.D.Cal., 165 F.Supp. 788.

■ It must appear that the public associated the "infringed" and infringing products with a "single source", that is, believed that the products were the same and that they came from the same manufacturer. Mutation Mink Breeders Association v. Lou Nierenberg Corp., D.C.S.D.N.Y., 23 F.R.D. 155, at page 159. Also Riverbank Laboratories v. Hardwood Products Corp., D.C.N.D.Ill., 165 F.Supp. 747, and Neely v. Boland Manufacturing Co., D.C.Minn., 170 F.Supp. 773. There is not sufficient evidence of confusion as to the source of the two indices here to warrant the granting of a preliminary injunction.

■ It is clear, however, that § 43(a) of the Lanham Trademark Act of 1946 was not merely a codification of the common law on unfair competition. L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., 3 Cir., 214 F.2d 649, 651. The "single source" rule was not written into the statute by Congress. Gold Seal Co. v. Weeks, D.C.D.C., 129 F.Supp. 928, affirmed sub. nom. S. C. Johnson & Son, Inc. v. Gold Seal Co., 97 U.S.App.D.C. 282, 230 F.2d 832, certiorari denied 352 U.S. 829, 77 S.Ct. 41, 1 L.Ed.2d 50; Mutation Mink Breeders Ass'n v. Lou Nierenberg Corp., supra.

Section 43(a) provides that:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

■ This section applies where a defendant advertises its inferior and much cheaper product by featuring a photographic reproduction of plaintiffs' product, thus creates the impression that his product is precisely the same as plaintiffs' and causes trade to be diverted from plaintiff to himself and other trade to be lost. L'Aiglon Apparel, Inc. v. Lana Lobell, Inc., supra. See, also, Ma-

ternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 234 F.2d 538.

■ The papers before me show that this is precisely what happened here. A careful examination of the two indices and the photograph used by defendants in their catalogue shows that defendants have, in fact, used a picture of plaintiffs' product to advertise their own cheap copy.

While the words "Phonette" and "Patent" "Made in Sweden" have been artfully removed from the brass metal strip illustrated in defendants' catalogue, there are several details which conclusively show that it is plaintiffs' index which is pictured. The strong wood grain which is the most obvious characteristic of "Phonette" when compared with "Telodex" is plainly in evidence on the photograph. Furthermore there are distinct differences in the form of the letters on the brass strips on the two devices. Examination of the letters "G", "H", "M", and the spacing of the "Z" in relation to the "W" and "Y", shows that it is a "Phonette" and not a "Telodex" which has in fact been photographed.

Defendants have submitted a card from a "Telodex" index on which are written various names and telephone numbers which they claim to be the exposed card shown protruding from the index in the photograph. Comparison of the writing on the photographed card with the writing on the card submitted by defendants shows such material differences in the relative positions of the various letters as to make it plain that defendants' claim is false. While the names and telephone numbers are the same on each card, various of the letters are in quite different positions vis-a-vis one another and the card submitted by defendants is plainly not the one in the photograph. It is a fair inference that this crude attempt at deception was made because the "Phonette" cards, like the brass strip, contain the words "Patent", "Phonette" and "Made in Sweden" and the cards in the "Telodex" do not. Thus, had defendants exhibited the card from the photograph they would have been hoist by their own petard. By this crude deception they have hoist themselves anyway.

It may also be noted that defendants' catalogue deliberately suggests that the index was invented by or for defendants. Finally, the catalogue fails in any way to indicate that the "Telodex" was made in Japan so as to distinguish it from the original for those who know "Phonette" by sight and recognize the photograph.

All this, taken together, constitutes a patent attempt to deceive prospective purchasers into believing that "Phonette" and "Telodex" are one and the same device and that the only difference between the two is price. That defendants were successful in their calculated deception is clearly reflected in the cancellations of orders and threats of cancellation which IDG has received to date.

Plaintiffs have shown the likelihood that continuance of these deceptions by the defendants will cause them continuing and irreparable injury in terms of loss of customers, reputation and goodwill. Such injury is likely to be magnified unless defendants are enjoined from continuing such conduct. The equities here all favor the plaintiffs, and, in fact, the defendants' own conduct before this court is such as to inspire little, if any, confidence in their veracity. It is probable that plaintiffs will succeed on the trial of the action on their claim under the Lanham Act at the very least.

Plaintiffs are therefore entitled to a preliminary injunction enjoining defendants from advertising or selling "Telodex" in the United States pending the hearing and determination of this action.

The foregoing constitutes my findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P., 28 U.S.C.A. Plaintiffs will post security of $5,000, pursuant to Rule 65(c), F.R.Civ.P., as a condition to the grant of injunctive relief.

Settle order on notice conforming to Rule 65(d), F.R.Civ.P.