**N. S. MEYER, INC., Plaintiff,**

v.

**IRA GREEN, INC., Defendant.**

**No. 70–Civ. 5105.**

United States District Court,
S. D. New York.

Jan. 11, 1971.

Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City, for plaintiff; by Siegrun D. Kane, New York City, of counsel.

Davis & Davis, New York City, for defendant; by Saul Stephen Davis, New York City, of counsel.

## OPINION

CROAKE, District Judge.

In this unfair competition action, brought in this court pursuant to 15 U. S.C. § 1121 and 28 U.S.C. § 1338, both the plaintiff, N. S. Meyer, Inc., and the defendant, Ira Green, Inc., with about four other companies, are manufacturers and distributors of United States military insignia and uniform equipment. Plaintiff is the largest of these; both it and defendant have been in business for at least twenty-four years. Their products are sold exclusively to military personnel, by means of "catalogs" called Price Agreement Bulletins (PABs), which are essentially their only contacts with prospective customers.

The method of operation of the parties is to submit proposed PABs to the Army and Air Force Exchange Service, located in Dallas, Texas. Upon approval by that office, they are distributed by it to the various post exchanges (PXs), where civilian employees use them in soliciting orders from the servicemen. 5 U.S.C. § 2105(c). Approximately 600 copies of plaintiff's current PABs have been so distributed.

This dispute arose when the defendant copied plaintiff's current Army and Air Force PABs and certain catalog numbers appearing therein and referring to military gloves ("the glove numbers"). That the PABs were copied cannot seriously be disputed; approximately 90 percent of the pages of defendant's PABs dated September 29, 1970 are photocopies of plaintiff's PABs dated August 25, 1969, including reproduction of typographical errors. *See* PIC Design Corp. v. Sterling Precision Corp., 231 F.Supp. 106, 110–111 (S.D.N.Y. 1964). Defendant does claim, however, that both it and plaintiff merely distribute gloves manufactured by a third company, which owns whatever rights may exist in the "glove numbers," and not plaintiff.

The present motion is for a preliminary injunction, and was brought on by order to show cause in which the undersigned declined to issue a temporary restraint of the activities complained of. The facts were developed by oral argument, affidavits, documentary evidence, and memoranda. This opinion shall constitute the undersigned's findings of fact and conclusions of law pursuant to F.R.Civ.P. 52(a).

The basic issues presented here are whether plaintiff's PABs or its glove numbers are entitled to injunctive protection against the type of copying which is alleged to have taken place, either under section 43(a) of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a) ("the Statute"), or under the common law of unfair competition and misappropriation.

The statute provides that:

"Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false de-

scription or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation."

■ The initial question is whether plaintiff's allegations, if proved, would constitute an actionable tort under the statute. Several requirements must be met: first, "goods or services" must be involved. The PABs themselves are probably neither, although they could conceivably be "goods" by analogy to similar documents, such as the advertising survey involved in the case of Glenn v. Advertising Publications, Inc., 251 F.Supp. 889, 903 (S.D.N.Y.1966) ("Glenn"), which were found to be "goods." However, the most reasonable interpretation of the statute is that the items listed in the PABs are "goods," and that the statute has been properly invoked by allegations that defendant's PABs are or contain allegedly false designations of origin "use[d] in connection with [the] goods." *Glenn, supra,* at 903.

■ The second statutory requirement is that interstate commerce be affected. However the statute is construed, it would appear that defendant's act in submitting the PABs to the Service Exchange had a sufficient effect on interstate commerce to satisfy the statutory requirements in this regard. Since defendant performed the act with knowledge that the Exchange Service would distribute the PABs, if approved, to the various PXs situated wherever United States troops are stationed, with the entire Army and Air Force thereby becoming exposed to them, it must amount either to "caus[ing] such goods or services to enter into commerce," or "caus[ing] or procur[ing] the same to be transported or used in commerce * * *." *See* Blazon, Inc. v. Deluxe Game Corp., 268 F.Supp. 416, 425–430 (S.D.N.Y.1965).

This court therefore possesses jurisdiction over the statutory claims. Jurisdiction over the common law claims follows pursuant to 28 U.S.C. § 1338(b).

It should be noted that no claim for trademark, trade name, or copyright infringement is presented here. While an examination of the PABs shows that certain items listed in plaintiff's PABs are noted therein as possessing registered trademarks or trade names, the comparable items in defendant's PABs have different names. The PABs themselves apparently possess no registered trademark or trade name protection. Plaintiff alleges that the allegedly misappropriated glove numbers "function as trademarks," but neither the numbers nor the names of the glove items are identified as having been registered.

It should also be noted that no claim for "palming off," as that term is known in trademark law, can be involved here, since defendant's right to manufacture and distribute its goods is conceded. It is also conceded that the buying public expects uniformity, which is governmentally mandated apparently by the United States Institute of Heraldry. [Defendant's affidavit at p. 2.] Damage to good will through substitution of inferior goods is not in this case, nor need it be. *Glenn, supra,* 251 F.Supp. at 902–903. What is here is diversion of trade, an entirely separate issue. *See* Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1963); Compco Corp. v. Day-Brite Lighting, Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1963). *See also* Airolite Co. v. Fiedler, 147 F.2d 496, 498 (2d Cir. 1945) (decided on the basis of

the common law of unfair competition), cert. den., 326 U.S. 726, 66 S.Ct. 32, 90 L.Ed. 431 (1945).

No claim for infringement of statutory or other copyright interests has been asserted. In fact, it appears that PABs of both parties lack copyright notices. Whether or not common law copyright protection would be available in these circumstances is another question which is not before this court.

■ However, the lack of a trademark or trade name does not prevent the vesting of jurisdiction either over the statutory claim or by operation of 28 U.S.C. § 1338(b) over the common law claims, so long as the 1338(b) "claim under the copyright, patent, or trademark law" being asserted is grounded on 15 U.S.C. § 1125(a), as is the case here. Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608, 611 (S.D.N.Y.1961) ("Zandelin"); *Glenn, supra,* 251 F.Supp. at 902.

■■ The third element necessary to sustain plaintiff's claim based on the Lanham Act section quoted above is that defendant "falsely designated the origin" of the items listed in its PABs. "Origin" in this regard means the source of manufacture, not merely the geographical area from which the goods in question were shipped. Federal-Mogul-Bower Bearings, Inc. v. Azoff, 313 F.2d 405, 408 (6th Cir. 1963). "False designation" may be shown by evidence of its consequences, namely, public confusion regarding origins; so long as the PABs or the glove numbers which were copied from plaintiff had previously become associated in the public mind with the plaintiff as originator, proof of "secondary meaning" as such, or the "uniqueness" of the plaintiff's PABs, whatever the necessity may be under relevant common law, is not required under the federal statute. Nor is scienter required, although defendant could at most dispute scienter with regard to the glove numbers. *See* the analysis of the elements in the cause of action in Gener-

al Pool Corp. v. Hallmark Pool Corp., 259 F.Supp. 383, 385–386 (N.D.Ill.1966). The nature of the proof required in 15 U.S.C. § 1125(a) cases has resulted in each case being decided essentially on its own facts.

In establishing itself as the well-known originator of its PABs, plaintiff asserts that, while the government does limit the possibilities for PAB design in the interests of standardization and mechanization, substantial latitude does remain for the exercise of creative abilities, particularly in the design of easy-to-read formats, descriptions, and abbreviations. Plaintiff claims the expenditure of $10,000 in design costs in connection with the preparation of its current PABs (a claim which is vigorously disputed). It is plaintiff's position that over the course of time, the individual efforts by the various companies active in this field have resulted in as many distinctive PABs as there are companies.

In alleging that confusion exists, plaintiff notes that there characteristically is an extremely rapid turnover of the PX employees who work with the PABs. Plaintiff further notes that only a very small percentage of the number or the dollar amount of PX sales are of the items sold by plaintiff and defendant. The inference would seem to be that, even though plaintiff's PABs are "well known," they and PABs in general receive at best cursory attention from the sales clerks who utilize them. Plaintiff believes that defendant has now capitalized upon the evident possibilities for confusion, as it has in the past (which defendant strongly denies), by attempting to create a situation in which PX personnel will mistakenly believe that they have been supplied with duplicate PABs, or that defendant's PAB, dated approximately one year after plaintiff's, is intended by plaintiff to be a substitute for its PAB, the difference in manufacturer's names and in catalog numbers notwithstanding. The obvious result in either case would be wholesale di-

version of plaintiff's customers to defendant. And since the PAB is essentially plaintiff's only contact with its customers, the damage would continue to accumulate until such time as plaintiff could satisfy all the administrative prerequisites for approval and distribution of new PABs.

Defendant's affidavit in opposition focuses upon plaintiff's assertion that it is well known as the originator of its own distinctive PABs; it is significant that the predictions of confusion are not directly attacked. It appears to be defendant's position that any PAB is, not a "catalog," but essentially the price list section of a standard-form contract drafted by the government for use between it and its suppliers. In support of this position defendant notes that the goods sold are standardized; that each vendor is assigned its own code number for each item sold; that the descriptions of the goods are essentially standardized, as is the type-face in which they appear, and much of the format; that sample layouts are provided to encourage further standardization even where not required; that extensive abbreviating is mandated, necessarily further diminishing the "creative design" possibilities; and that a vendor's failure to comply with these regulations will lead to a refusal to approve its PAB for distribution to the PXs. Defendant concludes that there is no possibility for "distinctiveness" under this system, first, because the PABs themselves never reach the "public," but remain in the possession of the government, and, second, because the extensiveness of the strictures mandates extreme similarity among all PABs.

Defendant is in error in its characterization of the PABs as contracts, not catalogs. The instructions of the Exchange Service state:

a. A Price Agreement Contract is an agreement whereby a Manufacturer agrees to supply certain items of merchandise to the Army and Air Force Exchange Service (AAFES)

Exchanges under specified contract provisions and conditions.

b. A Price Agreement Bulletin is a listing of merchandise available from a Manufacturer, reflecting the price, delivery time, discounts, etc., which is distributed to AAFES Exchanges as a source document for placement of purchase orders against a Manufacturer.

c. The Price Agreement Bulletin becomes a part of the Price Agreement by incorporation as Exhibit A. [Defendant's Ex. A, at 1.]

■■ These instructions disclose the existence of separate "Price Agreement Contracts"; the fact that the PABs are incorporated into them by reference or attachment of copies does not deprive the PABs of their independent existence as catalogs. PABs themselves are either offers to sell, or solicitations of offers to buy, it is not here important which. The facts that PABs are standardized and have a unique method of distribution do not prevent their being considered as occupying the same positions in these parties' businesses as trade catalogs or brochures have been held to occupy in other areas of endeavor. *See, e. g., PIC Design Corp., supra,* 231 F.Supp. 106 (decided on copyright grounds); Airolite Co. v. Fiedler, *supra,* 147 F.2d 496.

■ It must follow that the "public" is sufficiently affected by defendant's practices so that, if plaintiff's PABs are found to have been duplicated or substituted for by defendant's, 15 U.S.C. § 1125(a) will be applicable. *See* Schering & Glatz v. Sharp & Dohme, 146 F.2d 1019, 1022, 32 C.C.P.A. 827 (1944) (arising under the Trade-Mark Act of 1905), for a discussion of who may comprise the "public" in an analogous situation. While the present state of the record leaves it unclear whether the servicemen themselves compare different companies' PABs in making their orders, or whether the PX personnel do so for them, in either case such orders as are placed would appear to be for the

benefit of the individual servicemen, not the government.

■ The court therefore concludes that the plaintiff has made an adequate showing of a prima facie case under the Lanham Act in order to be able to request the relief it seeks. This determination obviates necessity of consideration of the common law grounds urged in this motion. The question then becomes whether an injunction *pendente lite* is warranted. In order for plaintiff to obtain such relief, it must demonstrate a reasonable probability of success at trial in the proof of the essentials of its claim, plus the fact that irreparable injury would flow to it from disallowance of the injunction. What is required is sometimes also described as a showing that "all the equities favor the plaintiff." *See, e. g., Zandelin, supra,* 197 F.Supp. 608, 612.

■ With regard to its claim for misappropriation of the glove numbers, the court determines that plaintiff has not adequately proved its exclusive right to the numbers; an injunction will not issue at this time on this claim.

■ However, with regard to its claim of unfair competition by copying of its PABs, the court determines that plaintiff has shown the requisite probability of success upon trial of the merits in order to obtain a preliminary injunction. The companies active in this field have been so engaged for many years; it is essentially a very static field. Each company had developed its own distinctive PAB. Continuation of defendant's activities will probably result in increases in the unjustified diversion of business which plaintiff fears. In light of the nature of the business, with large numbers of small dollar-amount sales, proof of the specific causes of particular diversions of trade in order to sustain an action for monetary damages would be extremely difficult, if not impossible. Equitable relief is therefore appropriate.

Defendant has predicted dire consequences for itself in the event that it is forced to remove the PABs from circulation. It has asserted, without evidentiary support, its conclusion that the Exchange Service will not accept new PABs at this time. Such does not appear to be the case; but in any event, defendant made its copies with full knowledge of the probable consequences in light of plaintiff's predictable response to its activities. The equities clearly favor the plaintiff here.

Accordingly, defendant will be enjoined *pendente lite* from causing its PABs numbered 4–3000 and 4–3001 to remain in circulation, and will be ordered to request that the Army and Air Force Exchange Service and its PXs return the above-described PABs to it. Consideration of other relief requested relating to these PABs is deferred to the trial. Issuance of this injunction is conditioned on the posting by plaintiff of security in the amount of $15,000, pursuant to F.R.Civ.P. 65(c).

Submit order on notice pursuant to F.R.Civ.P. 65(d).

So ordered.