**ROSENBERG et al. v. JOHN HASSALL, INC.**

**No. 466.**

Circuit Court of Appeals, Second Circuit.

Aug. 17, 1934.

Clarence M. Crews, of New York City (Drury W. Cooper, of New York City, Edgar M. Kitchin, of Washington, D. C., and Clarence M. Crews, of New York City, of counsel), for complainants-appellants.

Mock & Blum, of New York City (Asher Blum, of New York City, of counsel), for defendant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit for infringement of United States patent No. 1,432,151 to Heyman Rosenberg. Claims 5, 6, 8, and 9 are in issue. The bill was dismissed on the ground that the claims were invalid. The complainants are Heyman Rosenberg, the inventor and patentee, and Parker-Kalon Corporation, exclusive licensee under the patent.

The invention relates to improvements in fastening devices and more particularly to the type of pin employed for securing together plates of metal. The object in view is the provision of means for quickly and easily, and yet effectively, securing name plates, metal tags, or like parts, to the frame of machinery, or for securing together thin plates or sheets of metal, or for securing thin plates or sheet metal to heavier sections of metal.

The specification discloses a hammer-driven fastener for soft iron and steel made up essentially of a body or pin having a plurality of uniformly spaced ribs extending spirally along the body for the greater part of its length and terminating short of the entering end of the body so as to leave a smooth extension or pilot. The threads are made of hardened material so as to cut their way into the substance through which the pin is passed, and, for purposes of convenience in manufacture, the pin may be of case-hardened iron or steel so as to provide the requisite hardened cutting threads at a minimum cost of manufacture. The metal working tools are hardened in order to enable them to enter or cut the metal in its soft state, and the reference to the hardened threads, therefore, is to be taken to mean that character or condition of the threads which distinguishes them from the threads of the soft iron of the conventional wood screw so that the hardened threads

are able to cut or enter soft iron or soft steel substantially without injury to or effect upon the hardened threads. Any stress tending to separate metallic plates connected by the screw causes the metal engaged by the hardened threads to flow sufficiently to clog between the threads and thus resist withdrawal movement to the same or greater extent as the resistance of the head of a rivet. The frictional action of the metal engaging the side walls of the several threads co-operates in retaining the pin in its seated position. The exact pitch of the threads shown in the drawings need not be adhered to. It may be increased or decreased so long as it is kept within limits, which, on the one hand, are low enough to cause the metal screw or pin to turn when the pin is being driven in and also to effect the required hold on the material engaged by the screw, and, on the other hand, high enough to permit the screw to be driven into an opening in metal of a diameter substantially equal to the diameter of the body of the screw while the threads enter the metal surrounding the opening. The threads are somewhat similar to a screw thread of high pitch, and are so proportioned that the distance between the bases of any two diametrically opposite valleys is less than the diameter of the pilot.

In applying the fastener, a sheet of metal is secured to a plate or other part of a machine and the sheet is formed with an aperture of a diameter equal to or slightly larger than the greatest distance between the cutting edges of opposite threads. The plate is drilled to form a bore equal substantially to the diameter of the pilot. The pin is then placed in such position that the pilot extends into the bore. The head is then struck by a hammer until the pin is driven home in the metal and rotates slightly as it is forced to its seat. During the driving action the metal of the plate will be severed by the hard threads and caused to flow at the opposite sides of said threads into the valleys therebetween and to a position overhanging the shoulder portion of the pilot. The pin functions partly as a screw and also as a rivet; the end being anchored by the interlock of materials.

Claims 5 and 9, which may be regarded as typical of those in issue, read as follows:

"5. A fastener for metal work comprising a pin-like body having hardened threads of sufficiently high pitch to permit the driving of the body into an opening in metal of a transverse area less than a circle described about and touching the exposed edges of the threads, and sufficiently low to effect rotary

movement of the body incident to the action of the threads engaging the metal when the body is being driven into such opening, there being a sufficient number of threads to cause each of the threads to occupy substantially as much space as the space between any two consecutive threads for causing a clogging action between the threads by the metal engaged thereby when the pin is subjected to a withdrawing stress after being driven into such opening."

"9. A fastener for metal work comprising a pin having a substantially cylindrical body and hardened threads extending along the pin and of sufficiently high pitch to allow the pin to be driven into an opening in metal of substantially the same diameter as the body, a portion of the body extending beyond one terminus of the threads for forming a pilot."

As soon as the drive screw of the patent was put on the market there were sales of as many as 200,000 per month. The Parker-Kalon Company now has a production capacity of 8,000,000, and its customers include practically every branch of the metal work companies and many of the chief industries of the country. The invention has met with a wide commercial success, and prior to its advent there seems to have been no type of hammer-driven fastener for anchorage in solid bodies of the harder metals such as soft iron and steel that was at all practical. There was testimony that the only infringer of the patent prior to defendant was the Western Screw Company which, upon being sued, submitted to a decree against it.

The defendant contends that the patent lacks invention and also, though with little basis, that it does not infringe. But we can discover nothing in the prior art which casts any real doubt as to the originality and usefulness of Rosenberg's device.

In 1931, we held a former patent to Rosenberg invalid for a case-hardened screw that had to be rotated by a screw driver or wrench instead of being driven by a hammer, when forced into metal. It did not have the features of a pin with threads of a sufficiently high pitch to be driven into an opening of metal of substantially the same diameter as the body, and was thought to be anticipated by the British patent No. 17,477 (1895) to Williams, where the pitch appears from the drawings to have been even less than in the Rosenberg device we had before us, and the screw was not of the hammer-driven type but one to be rotated by a screw driver.

United States patent No. 2,417 to Steiger, issued in 1842, shows a spike with a thread of rather high pitch for use in wooden framework or for screwing down iron rails upon their wooden ties or bearings. A similar spike or bolt with threads having a pitch that is less sharp than that indicated in the patent in suit is shown in United States Patent No. 289,333 to Bray. This also was intended for use in wood and like the early patent to Steiger had not hardened threads.

The United States patent No. 461,477 to Haupreicht discloses a spike to be driven into wood, and states that "the fibres of the wood will be crowded in the spike to such an extent as to offer a maximum resistance to the withdrawal." Of course this patent did not provide for hardening of the threads and had nothing to do with fastenings in soft steel or iron.

The United States patent to Whitney, No. 107,143, illustrates small screws to be inserted by a screw driver in the soles and heels of shoes and to be used for arming them so as to prevent rapid wear. The threads as shown have almost no pitch, though the screws are to be "hardened."

It is evident from the foregoing patents that there had been no invention showing the combination we find in the patent in suit. Indeed the only patent for screws to be inserted in metal is the old British patent to Williams, and that screw, though tempered, was to be rotated by a screw driver and had threads of so slight a pitch that they would be stripped if driven by a hammer.

The defendant much relies on Rosenberg's old rotatable screw, which had a case-hardened thread and was put on the market in 1913. But this screw was of the ordinary type as to the pitch of the threads and could not be hammer-driven.

Defendant still more relies on his own hammer-driven small screw with a hardened thread of high pitch. These screws were hardened by rolling, which is very different from tempering by case hardening, and could only be driven into brass or thin sheets of soft metal. If driven into iron or steel, the "threads would strip and you would not get an anchorage." Record, p. 97. It might work in brass, but was unfitted for soft steel or iron. Apparently these screws met with no great success as defendant seems to have stopped manufacturing them about 1920 and at the time of the trial still had some of its stock on hand. Instead of continuing to sell these screws, in December, 1932, defendant began to make substantially the identical

structure of the patent in suit and thus paid Rosenberg's patent the tribute of imitation.

The prior art shows screws with (1) tempered threads and (2) with threads of a high pitch, but the features of case-hardened threads and threads with a high pitch had not been combined to make a hammer-driven screw. The result of the combination has been to make a product that fills from 15 per cent. to 20 per cent. of complainants' large output. It is easy enough now to say that this did not involve invention and that all the patent shows could have been accomplished by case hardening defendant's small screws instead of roll hardening them. But they had been on the market for years, had been gradually abandoned, and it had occurred to no one that these as made, or as modified, could be driven into an opening in soft iron or steel or that screws could be made that would cut their own threads in solid metal. While the result reached by the court below may at first seem natural in view of our former decision in Rosenberg v. Carr Fastener Co. (C. C. A.) 51 F.(2d) 1014, and the trial judge reached his conclusion by careful and plausible arguments, we are convinced that in the present patent Rosenberg has displayed real invention and has devised a practical hammer-driven screw for use in iron and steel. This, and the adoption of the article in trade, persuades us that the patent is valid.

Such devices as were in use before the present invention are, of course, available for any one who wants them, but they do not seem to accomplish the purpose of those made under the patent in suit. Defendant's president admitted that the sales of his small screws (Exhibit I) were used "in white metal, celluloid, bakelite and similarly plastic materials," and there seems to have been no attempt to use them even in sheets of brass until they were inserted in an exhibit for proof at the trial of this case (Exhibit N). The Rosenberg hammer-driven screw enables workmen to drive the fasteners in metal without the labor and delay of making threads in the openings and screwing the bolts in. Compared to a bolt or a rivet, it can be applied in places where only one face of the metal is exposed, and it gives a firmer contact because of the embedding of the threads in the material.

The contention that because the claims use the term "hardened threads" and not "case hardened threads" they are anticipated by defendant's earlier screw (Exhibit I) is without foundation. The meaning of "hardened" is defined in the specification as "that degree of hardness enabling the threads to enter and cut metal such as soft iron or steel, substantially without injury to the threads." Defendant's screw, which was only hardened by rolling, possessed no such attribute as the screw called for by the claims.

Defendant's structures all read on claims 5, 6, and 8. It is evident that defendant's fastener (iii) does not infringe claim 9, because that claim calls for "a portion of the body extending beyond one terminus of the threads for forming a pilot" and (iii) has no such extension. The products (i) and (ii), however, do have a pilot and infringe all four claims. Claim 9 makes no reference to the proportion of parts required to provide a shoulder for the screw, and, as other claims of the patent, e. g., 10 and 11, do make such a reference, complainants are right in saying that claim 9 should not be limited to a shoulder, but covers any smooth centering projection extending beyond the entering ends of the threads.

The contention is not established that the clauses in claims 5, 6, and 8, which provide that the thread shall occupy substantially the same space on the body of the pin as the space between any two consecutive threads, relate to features forming no part of the original invention. The spacing is plainly shown in figures (1), (2), and (3), and it is evident that it generally accords with the above limitation in claims 5, 6, and 8. The clauses do no more than describe in fuller detail what was the evident structure of the patented device.

We think that Rosenberg made a real and substantial contribution to the art, and, though others may have sought a solution, he alone devised a practical hammer-driven screw for fastening metallic plates. The development of fasteners clearly shows that his combination of old elements was not obvious.

In view of the foregoing, we hold that the decree must be reversed and a decree granted for the complainants with the usual injunction and reference.