**ROSENBERG et al. v. GROOV–PIN CORPORATION.**

No. E–7541.

District Court, E. D. New York.

June 19, 1935.

Clarence M. Crews, of New York City (Edgar M. Kitchin, of Washington, D. C., of counsel), for plaintiffs.

Dean, Fairbank, Hirsch & Foster, of New York City (Morris Hirsch, of New York City, of counsel), for defendant.

BYERS, District Judge.

Motions in a patent cause, by plaintiffs for a preliminary injunction, and by defendant to dismiss as to two of the plaintiffs' patents. These will be considered together.

The bill alleges that the following patents, which were issued to Rosenberg, have been infringed by the defendant, and the co-plaintiff is the sole licensee of said patents:

United States Letters Patent No. 1,482,-151,

United States Letters Patent No. 1,545,-471,

United States Letters Patent No. 1,686,-468,

United States Letters Patent No. 1,912,-222,

United States Letters Patent No. 1,978,-145.

■ Of the foregoing, the first has been adjudicated by the Second Circuit Court of Appeals in the case of Rosenberg v. John Hassall, Inc., 73 F.(2d) 58, as to claims 5, 6, 8 and 9. The last is said by the plaintiffs to enjoy the status of an adjudicated patent, because it was granted as the result of a suit against the Commissioner of Patents, under U. S. Rev. St. § 4915 (Title 35 U. S. C. § 63 [35 USCA § 63]), in the Supreme Court, District of Columbia, reported as Rosenberg v. Coe, Commissioner, 62 Wash. Law. Rep. 780.

It is not alleged in the bill that, in the last-mentioned suit in equity, there was any opposing party other than the commissioner.

At most, patent No. 1,978,145 is before the court carrying the usual presumption of validity proceeding from the grant, and fortified by a judicial decree which imports patentability. Hill v. Wooster, 132 U. S. 693, 10 S. Ct. 228, 33 L. Ed. 502. None the less the patent has not been tested in a controversy in which validity was in issue at the instance of a party entitled to be heard on the question, and the decree will not, therefore, be treated as though the patent had been adjudicated in the sense that applies to patent No. 1,482,151.

■ The other three patents, namely, Nos. 1,545,471, 1,686,468 and 1,912,222, concededly have not been adjudicated, and, as to the defendant's alleged infringement thereof, the motion for preliminary injunction will be denied.

■ The devices which are alleged to infringe are three in number, designated Specimen A, Specimen B, and Defendant's Exhibit 3.

They are all anchorage or fastening devices, hammer driven into a hole drilled in metal to receive them, and are employed, as the defendant says (except Specimen B) to hold fabric lace (i. e., anti-squeak strips) to a thin sheet of metal, in the manufacture of automobiles.

The defendant avers and the plaintiffs deny, that the pins, Specimen A and Exhibit 3, after being driven into place, are turned, by the use of a screwdriver inserted in the fillister head, so as to bring the ribs or threads of the fastener, which entirely penetrate the metal, out of registry with the key-ways or channels which have been cut into the metal surrounding the hole (through which the fastener is driven); thus securing anchorage by the opposition of the top of the threads or ribs to the solid metal between the key-ways or channels.

This is plausible, because there is a space at the top of these pins, under the head, which is the body of the pin itself, containing neither ribs nor threads, that is of a sufficient depth to penetrate the combined thicknesses of the fabric and the thin metal plate, leaving the threads or ribs entirely exposed beyond the metal. It would be sensible to give the pin a sufficient turn, in that position, to render withdrawal impossible.

It is not seen how the court can dispose of the issue of fact thus presented, upon affidavits.

The opinion in Rosenberg v. John Hassall, Inc., supra, shows clearly that the court perceived the invention to lie in the capacity of the plaintiffs' fastener to anchor in thin plates or sheets of metal, partly as the result of the slight rotation of the device as it was driven into the metal, the case-hardened threads cutting the metal surrounding the drilled aperture; the metal so cut was caused to flow at the opposite sides of the threads "into the valleys there between and to a position overhanging the shoulder portion of the pilot. The pin functions partly as a screw and also as a rivet; the end being anchored by the interlock of the materials."

The defendant's fastener A is said by it not to function as described in the foregoing, and it is not possible to say whether

this is true or false without taking testimony. One of these fasteners is presented by the defendant, upon which the threads have been mutilated and partially stripped as the alleged result of an effort to employ the device as that of the plaintiffs is used, that is, to anchor it in soft iron. The mutilation of the threads is said to be due in part to their not having been case-hardened, which is an essential element of the plaintiffs' patented structure.

If this representation is true, it has an important bearing on the question of infringement, which can be resolved only after testimony has been taken.

This is important because the plaintiffs assert that, even though this device is not presently a competitive product, it is susceptible of employment as such. The present showing is not sufficient to justify the issuance of an injunction on that ground.

The defendant's products Specimen B and Defendant's Exhibit 3 are fastening devices which are ribbed, not threaded. The status of the former as an active element in the defendant's output is not entirely clear, but the opposing affidavits indicate that it has been made, which is sufficient for present purposes, whether or not it has been sold. Probably the defendant would offer this device for sale, if sufficiently encouraged by the disposition of these motions.

These two structures containing ribs are not within the adjudication of patent 1,482,-151, because claims 10 and 11 were not passed upon in Rosenberg v. John Hassall, Inc., supra. Those claims refer respectively to a pinlike body having (a) a rib extending along the body and a pilot outstanding beyond the base of the rib, and (b) the same, having ribs extending along the body with valleys there between, and a similar pilot, of greater diameter than that measured between opposite valleys. That Patent was filed September 24, 1921.

Patent No. 1,978,145, issued as the result of the said equity suit, bears the application date of January 25, 1924. Speaking generally, it covers such a device for anchorage in metal work, with a rib or ribs extending along its body as the anchorage means.

The specification states that the claims of patent No. 1,482,151 are not broad enough to read upon the structure shown in the drawing Figure 1. If that is the patentee's understanding of the difference between the structures described in the two

patents, it must be clear, for present purposes, that there was no adjudication in Rosenberg v. John Hassall, Inc., supra, of the singular or plural rib device, the ribs being parallel to the axis of the body.

Specimen B and Defendant's Exhibit 3 do resemble the structures described in patent No. 1,978,145, but they require separate consideration since the same question of infringement is presented concerning Exhibit 3 as in the case of Specimen A; that is, the defendant asserts that anchorage is secured by a turn of the fillister head by a screwdriver, after the fastener has penetrated the fabric and the sheet metal in which the receiving aperture has been drilled; that, when this has been done, the ribs are brought out of register with the channels which have been cut in the metal surrounding the aperture.

This assertion may be true, and certainly is plausible enough for present purposes; at least the contrary cannot be deemed to have been shown sufficiently to justify the issuance of a temporary injunction, for the reason that the unribbed section of the body of this fastener, like that of Specimen A, is of sufficient depth to occupy the fabric and the aperture in the sheet metal, leaving the entire ribbed portion of the body exposed after the turning with the screwdriver.

As to Specimen B, the showing is different. The ribs are disposed upon the entire body of the fastener down to the pilot, and the fact that they are in two groups, upper and lower, the lower off-set from the upper, and that the latter are directly under the head, differentiates this fastener completely from the defendant's other two structures.

The only real difference between this fastener and that shown in Figure 8 of patent No. 1,978,145 is that the pilot of the latter is pointed, while that of defendant's Specimen B is blunt. But the pilot is not an element of the patented device.

Answers to interrogatories filed since the motion papers were received (but called to the court's attention by plaintiffs and not since withdrawn or explained away by defendant) disclose that the ribs on Specimen B are case-hardened or hardened.

It is thought that plaintiffs' prima facie showing of infringement of its patent No. 1,978,145 by defendant's Specimen B is so compelling as to entitle it to (a) a preliminary injunction as to this device or (b) a requirement that the defendant pay

a royalty into court, to be agreed upon, for each one manufactured now or hereafter, pending final hearing, the disposition of which fund shall abide final decree in the cause.

If the defendant prefers to submit to an injunction pendente lite, the amount of the bond to be given by plaintiffs may be agreed upon by the parties, or it will be fixed by the court if that is not possible.

Motion for preliminary injunction denied in part and granted in part, as indicated.

The defendant's motion to dismiss as to patents Nos. 1,545,471 and 1,686,468 is denied.

Settle order on 3 days' notice.