## ROSENBERG et al. v. GROOV–PIN CORPORATION.

### No. 148.

Circuit Court of Appeals, Second Circuit.

· Jan. 13, 1936.

Drury W. Cooper and Clarence M. Crews, both of New York City, for plaintiffs.

Morris Hirsch and Dean, Fairbank, Hirsch & Foster, all of New York City, for defendant.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff is the owner of two patents for metal pins, Nos. 1,482,151, and 1,978,145. We had the earlier of these before us in Rosenberg et al. v. Hassall, 73 F.(2d) 58, and held that the claims now in suit, Nos. 5, 6, 8 and 9, were valid and infringed. The plaintiff asserts that one of the defendant's pins, Exhibit A., infringes these claims, which the defendant denies, coupling with that denial an attack upon their validity by a new reference not before us on the other appeal, British Patent No. 994 of 1865 issued to one, Brown. The judge held that Exhibit A. did not infringe and denied a motion for an injunction pendente lite. To an understanding of the issues involved it is necessary to recall some of the details of the disclosure. The invention is for a pin to hold together two pieces of metal; it is made of a round main shank, carrying spiral case-hardened cutting ribs from a top or head down to a short blunt pilot end. In the upper of the two pieces to be fastened together, a hole is bored large enough to accommodate the ribs without touching; in the lower piece is a smaller hole, a little larger in diameter than the shank, but smaller than the distance between opposed edges of the cutting ribs. As the pin is driven home, the metal of the lower piece is displaced by the cutting edges of the ribs and flows into the valleys between them, making a firm hold and preventing dislodgment. The claims in suit are all for pins with spiral ribs, and contain the phrase "hardened threads," which is to be interpreted by the following language of the specifications, page 1, lines 102–107: "the reference to the hardened condition of the threads in the appended claims is to be taken in each instance to signify that degree of hardness enabling the threads to enter or cut metal, such as soft iron and soft steel, substantially without injury to the threads." The hardness is thus made a function of the metal of the lower of the two pieces to be fastened; against that metal the ribs must stand up.

Exhibit A. is a pin having spiral cutting ribs, case-hardened, which run up from a pointed pilot end for about half the

length of the shank, stopping far enough from the top or head to accommodate the thickness of the two sheets to be held together, the lower of which must be of metal; for the remainder of its length the shank is bare like that of an ordinary iron nail. In practice the pin is driven through the lower sheet, cutting grooves as it goes, like the patented pin. When driven home, the upper ends of the ribs have passed below the lower surface of the lower metal sheet, so that only the bare shank is in the holes. The pin may then be rotated until the ribs are out of register with the grooves they have made, so preventing its withdrawal. Plainly this pin does not operate in the way intended by the disclosure, which is to hold together the pieces by imbedding itself in the metal of the lower piece. Nevertheless, the claims are for a pin of specified form, and say nothing about the length of the ribs, and Exhibit A. would operate like the patented pin, if used with a thick enough lower sheet. Thus, it infringes, if the ribs are the "hardened threads" of the claims, which in turn depends upon whether they have "that degree of hardness * * * to enter or cut * * * soft iron and soft steel, substantially without injury to the threads." Whether the cutting ribs of Exhibit A. will be mutilated if imbedded in soft steel, is in dispute, and the issue is not one to be settled by affidavits; it must await trial, where it will however be the only relevant issue. We hold that the British patent is not a good anticipation of patent 1,482,151; we adhere to our former decision as to validity. It is not necessary to labor the obvious fact that neither Exhibit B. nor Exhibit 3 can infringe this patent.

■ The other patent is more general, though applied for only a few days before the earlier one issued. The claims were refused by the examiner, the examiners in chief, and the Commissioner, but they have been allowed by a justice of the Supreme Court of the District in a suit brought under section 63 of title 35, U.S.Code (35 U.S.C.A. § 63) to which only the Commissioner was defendant. Whether that was an adjudication which justifies a preliminary injunction, is a question which appears to be res nova. The doctrine that in the absence of long acquiescence or adjudication an injunction will not go, is at first blush anomalous in the light of the presumption of validity which courts generally grant to a patent once issued. It may rest upon two different theories, and the difference is vital here. Courts might say that until judges, as distinct from administrative officials, pass upon the references turned up in the progress of the application through the Office, the patent has not even a prima facie validity. They would then reserve the issue of invention wholly to themselves, and there is perhaps some appropriateness in this, because though the question is often called one of fact, it is more properly a question of law, being the application of a standard, fixed by the judge ex mero motu. If that were the basis of the doctrine, a decree in a suit under section 63 of title 35, would give the required sanction, even though the only defendant were the Commissioner, and the only prior art that which the examiner turned up. But if so, we ought also to treat as sufficient the ruling of the Court of Appeals of the District upon appeal from the Commissioner before the amendment of 1927, and that of the Court of Customs and Patent Appeals thereafter. That has never been decided. The other theory is quite different and much more practical. Examiners have neither the time nor the assistance to exhaust the prior art; nothing is more common in a suit for infringement than to find that all the important references are turned up for the first time by the industry of a defendant whose interest animates his search. It is a reasonable caution not to tie the hands of a whole art until there is at least the added assurance which comes from such an incentive. If that be the basis of the rule, as we believe it should be, suits under section 63 of title 35, U.S.Code (35 U.S.C.A. § 63) will not serve when the Commissioner is the only defendant. They might be well enough prima facie to establish the validity of the patent over such references as the examiner chances to find, but they should no more establish invention than the grant itself.

Unfortunately the decisions are of little help; the distinction does not appear to have ever been taken. However, the use of the acquiescence of the industry as an equivalent of an adjudication is in line with our view. This was very early adopted first in England, (Harmer v. Plane, 14 Ves. 130; Hill v. Thompson, 3 Mer. 622; Collard v. Allison, 4 Myl. & C. 487); and later by us. (Ogle v. Ege, Fed. Cas. No. 10,462, 4 Wash.C.C. 584; Orr v.

Littlefield, Fed.Cas. No. 10,590, 1 Woodb. & M. 13; Orr v. Badger, Fed.Cas. No. 10,-587, 1 Brunner, Col.Cas. 536). Its only rational justification is that those whose interest would lead them to contest validity, have upon examination concluded that contest would be fruitless, and that that examination is some assurance of the truth. True, after an interference proceeding in the Office the priority then established might have been thought to have some prima facie validity even when the question of priority arose in an infringement suit against another than the defeated claimant. The rule is otherwise. Edward Barr Co. v. Sprinkler Co. (C.C.) 32 F. 79, 80; Westinghouse Electric Co. v. Roberts (C.C.) 125 F. 6; Hildreth v. Curtis & Son Co. (C.C.) 157 F. 394. But all that can be drawn from that is that in the Office not even an adjudication inter partes will serve; certainly that does not lead to any reliance upon the examiner's search as exhaustive. Even an adjudication in court is jealously scrutinized to make sure that the case was not moot. Wilson v. Consolidated Store-Service Co., 88 F. 286 (C.C. A.1). Mr. Justice Woodbury in Orr v. Littlefield, supra, Fed.Cas. No. 10,590, 1 Woodb. & M. 13, and Judge Lacombe in Dickerson v. De La Vergne, etc., Co. (C. C.) 35 F. 143, 146, at least intimated that the importance of a contested suit lies in stimulating a vigorous search of the art and a severe test of the invention. We own that all this is not very impressive as authority, but there is nothing to the contrary, and the matter seems to us clear in principle. We therefore hold that a decree in a suit under section 63 of title 35, U.S.Code (35 U.S.C.A. § 63), is not enough to support a preliminary injunction when the Commissioner is the only defendant.

Nor is the case at bar one of those relatively rare instances where a preliminary injunction should go without adjudication. Brown's British patent alone is enough to throw some doubt upon validity. The patent in suit is for a pin with straight ribs and a point, differing in substance from the earlier patent only in that the ribs are not spiral. The specifications, page 3, lines 50–56, specifically declare that the number of ribs is immaterial, even a single one being enough, and the underlying theory is the same as in Brown's patent; the metal displaced by the edges of the ribs flows between them and makes the grip. Just why this grip is as firm as it appears to be, is not clear; the plaintiff insists that the particles of metal being driven down with the passage of the pin, hold it by a wedge-like action. But whatever the proper explanation, the pin of the British patent with its three edges may well operate in the same way; once the number of ribs be left at large, as the specifications in suit expressly leave it, the reference is pertinent, though possibly it may not be controlling. The judge held that the patent was prima facie valid, and that Exhibit B. infringed it, though Exhibit 3 did not. In the view we take the issue of infringement does not arise at this stage of the suit.

Decree affirmed as to patent 1,482,151.

Decree affirmed in part and reversed in part as to patent 1,978,145.

Preliminary injunction denied as to both patents.