TEMPO INSTRUMENT, INC., Plaintiff,

v.

LOGITEK, INC., and Herbert L. Fischer,
Defendants.

No. 64-C-167.

United States District Court
E. D. New York.

April 23, 1964.

**2**

Jerome Bauer, Mineola, N. Y., for plaintiff.

Darby & Darby, Floyd H. Crews, New York City, for defendants; Bobroff, Olonoff & Scharf, Howard C. Miskin, New York City, of counsel.

ZAVATT, Chief Judge.

In the instant action the plaintiff, alleging patent infringement and unfair competition by the defendants, seeks an injunction, an accounting of profits, treble damages and an assessment of costs and reasonable attorneys' fees. The case is now before this court on plaintiff's motion pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction pending the final hearing and determination of this action.

Plaintiff is a domestic corporation engaged primarily in the manufacture of an electronic timing device known as a Time Delay Relay. It claims to be the assignee of a patent issued on March 19, 1963 (United States Letters Patent No. 3,-082,329) directed to an electronic circuit referred to as the Gate circuit. The individual defendant, Herbert L. Fischer, was employed by the plaintiff as an engineer from April 1959 until May 1960. In September 1961 Fischer organized the corporate defendant, Logitek, Inc., which also engaged in the manufacture of time delay relays. In sum, the plaintiff alleges that the defendants are making, using and selling articles which infringe upon its patent and that the defendants are availing themselves of trade secrets disclosed to the defendant, Fischer, during his employment with the plaintiff.

■ The plaintiff's patent, issued March 19, 1963, has never been adjudicated. Moreover, there has been no showing that either the public at large or any of the 116 other firms which manufacture time delay relays have acquiesced to this patent. Under such circumstances the cases in this Circuit leave no doubt that a preliminary injunction will not issue for this alleged infringement. As was said in Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608, 610 (S.D.N.Y.1961):

> "It is well established that a preliminary injunction will not issue for patent infringement unless the validity of the patent is clear and beyond question. * * * The issuance of letters patent, standing alone, is not sufficient to support such drastic relief."

See White v. Leanore Frocks, Inc., 120 F.2d 113 (2d Cir. 1941) (per curiam); Rosenberg v. Groov-Pin Corp., 81 F.2d 46 (2d Cir. 1936); Singer Mfg. Co. v. Better Service Sewing Mach. Co., 131 F.Supp. 146 (S.D.N.Y.1955); Stewart Stamping Corp. v. Westchester Products Co., 119 F.Supp. 92 (S.D.N.Y.1953).

■■ With regard to the question of unfair competition, the plaintiff's allegations may be separated into two basic claims. To begin with, the plaintiff alleges that its Gate circuit has always been maintained as a trade secret; that it notified all key personnel, including the defendant Fischer, of this fact; that Fischer, in breach of his confidential relationship with the plaintiff, and the defendant Logitek are currently utilizing Fischer's knowledge of the Gate circuit in the manufacture of time delay relays which are being sold in competition with the plaintiff's products. For present purposes only, the court will assume arguendo that this Gate circuit is of such substantial value as to qualify as a trade secret; that the plaintiff maintained a sufficient degree of secrecy as to the nature of this circuit; and that the defendants are actually utilizing information gained by Fischer in a confidential relationship with the plaintiff. Naturally, the actual truth or falsity of these allegations will have to be established at a full trial. Nonetheless, even if such facts were to be established by the plaintiff, a preliminary injunction could not now issue under the doctrine of unfair competition. Notwithstanding the contrary

view taken by some Circuits, see, e. g., Shellmar Products Co. v. Allen-Qualley Co., 87 F.2d 104 (7th Cir.), cert. denied, 301 U.S. 695, 57 S.Ct. 923, 81 L.Ed. 1350 (1937), it is well established in this Circuit that one who is alleged to have wrongly utilized a trade secret is accountable under the doctrine of unfair competition only for such use as is made of the secret before it is made public by the issuance of a patent thereon. See Schreyer v. Casco Products Corp., 190 F.2d 921 (2d Cir. 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 360, 96 L.Ed. 683 (1952); Conmar Products Corp. v. Universal Slide Fastener Co., 172 F.2d 150 (2d Cir. 1949); Pennington Eng'r Co. v. Honde Eng'r Corp., 136 F.2d 210 (2d Cir.), cert. denied, 320 U.S. 771, 64 S.Ct. 84, 88 L.Ed. 461 (1943); Picard v. United Aircraft Corp., 128 F.2d 632 (2d Cir.), cert. denied, 317 U.S. 651, 63 S.Ct. 46, 87 L.Ed. 524 (1942); Kesses v. Eastman Kodak Co., 82 U.S.P.Q. 13 (S.D.N.Y. 1949); Kohloff v. Ford Motor Co., 37 F. Supp. 470 (S.D.N.Y.1940). See also, Ellis, Trade Secrets, § 161 at 224–26 (1953). After such disclosure, the "use of that source of information would not, apart from the risk of infringement, [be] * * * wrongful." Schrever v. Casco Products Corp., supra, 190 F.2d at 924. It may be that, ultimately, the defendants will be found liable under the doctrine of unfair competition for their alleged use of the Gate circuit prior to March 19, 1963, the date a patent was issued thereon. However, their prospective use of that circuit would be actionable only as patent infringement, not as unfair competition.

■ It would appear that the main thrust of the plaintiff's unfair competition allegation is that the defendants have utilized aspects of manufacture and production which were not disclosed by the issuance of the patent. Thus it is alleged that the defendants have violated a confidential relationship by making use of information such as plaintiff's costs and prices, its techniques for purchasing and using components necessary to manufacture and the testing techniques used

by the plaintiff. As a result of such activities it is alleged that Logitek, Inc. has successfully underbid the plaintiff on numerous occasions and has thereby competed unfairly.

At the outset it must be noted that there has been little showing that such purchasing, manufacturing and testing techniques would qualify as trade secrets, i. e., that they are of such value as to be afforded judicial protection. See Ellis, Trade Secrets, § 209 at 294 (1953). One commentator has suggested that the test be whether "the idea or information [is] * * * something which gives the possessor an opportunity to obtain an advantage over competitors who do not know or use it." Kalinowski, Key Employees and Trade Secrets, 47 Va.L.Rev. 583, 587 (1961). Such a test, if applied to the instant case, would appear to give little support to the plaintiff's contentions. If these techniques which plaintiff contends to be trade secrets were truly of such substantial value, it would seem that they would place the plaintiff at a distinct competitive advantage over the other 115 firms (excluding Logitek) who manufacture time delay relays. Yet the affidavit of Fischer states that he does not "believe that there has ever been a single case where there was not at least one company other than Logitek that underbid Tempo." Moreover, while the plaintiff has made some showing that the actual Gate circuit was maintained as a trade secret by Tempo, the papers now before this court give little evidence of such secrecy surrounding the plaintiff's purchasing, manufacturing and testing techniques.

■ The court is of the opinion that this know-how, alleged to have been disclosed to the defendant Fischer in a confidential relationship and then wrongly utilized by him, constitutes nothing more than the general knowledge and experience gained by an employee in any business and is, therefore, not actionable. The defendant Fischer, like many engineers, has been employed by numerous electronic firms. It appears that several of these positions involved work upon

transistor circuits and that his duties at each of these companies provided him with knowledge which made his services desirable to the plaintiff. The plaintiff, having drawn upon Fischer's prior experiences, can hardly now complain that he has added his Tempo experiences to the sum total of his knowledge and is utilizing this knowledge at Logitek. Fischer's "experience, his skill, his unmatured thoughts and designs were his own. That they had been gained at the expense of the plaintiff certainly gave the latter no legal right to them." New York Automobile Co. v. Franklin, 49 Misc. 8, 14, 97 N.Y.S. 781, 785 (Sup.Ct.1905), aff'd per curiam, 134 App.Div. 908, 118 N.Y.S. 1127 (4th Dept. 1909), aff'd per curiam, 202 N.Y. 557, 95 N.E. 1134 (1911). "An employee, upon the termination of his employment, is free to draw upon his general knowledge, experience, memory and skill, howsoever gained, provided he does not use, disclose or impinge upon any of the secret processes or business secrets of his former employer." 2 Callmann, Unfair Competition and Trade-Marks, § 55.2(a) at 824 (2d ed. 1950). This court is convinced upon the papers before it that the defendant Fischer did not draw upon any such secret processes or business secrets of Tempo, since it does not appear that this know-how was in fact a trade secret. The findings of the New York Supreme Court in Richard M. Krause, Inc. v. Gardner, 99 N.Y.S.2d 592, 594–595 (Sup. Ct.1950) are apposite:

> "The plaintiff not only failed to establish that its general methods of manufacture are secret, it also failed to establish that its techniques with respect to meeting the requirements of individual customers were real trade secrets. * * *

> "The plaintiff claims that one of the trade secrets wrongfully used by the defendants was the plaintiff's method of estimating costs. The defendants readily admitted that they knew the plaintiff's method, and that the defendant corporation used it. (There has been no such admission in the instant case.) But this is no trade secret, the use of which this court will enjoin. It is a matter of experience, knowledge of the business, and judgment. The factors to be considered in making estimates are fundamental—inside costs, outside costs, overhead, and profit. The amount of money making up each factor necessarily fluctuates with the market. There is nothing secret in the decision of how much of a mark-up percentage is necessary for a good profit. Good estimating in this industry has the same common denominators as in others—experience and intelligence.

> "The defendants are accused of having learned the plaintiff's sources of supply and the prices that the plaintiff charged to various customers. This information constitutes part of the general knowledge and experience that a person acquires in any business. The use of that knowledge and experience will not be enjoined."

See also, Apollo Stationery Co. v. Pilmar, 11 Misc.2d 263, 266, 173 N.Y.S.2d 854, 857 (Sup.Ct.1958). In Haggerty v. Burkey Mills, Inc., 211 F.Supp. 835, 838 (E.D.N.Y.1962), this court noted with approval the finding in S. W. Scott & Co., Inc. v. Scott, 186 App.Div. 518, 524, 174 N.Y.S. 583, 586–587 (1st Dept. 1919), that an "employee may make use in his new employment of the knowledge he had acquired in the old. If it involves no breach of confidence, it is not unlawful, 'for equity has no power to compel a man who changes employers to wipe clean the slate of his memory.' (Peerless Pattern Co. v. Pictorial Review Co., 147 App. Div. 715, 717 [132 N.Y.Supp. 37, 39].)"

For the foregoing reasons the plaintiff's motion for a preliminary injunction is denied.

Settle an order consistent herewith on or before ten (10) days from the date hereof.