**INTERNATIONAL BIOTICAL CORP.,**
Plaintiff,

v.

**FEDERATED DEPARTMENT STORES,
INC., Defendant.**

No. 64–C–293.

United States District Court
E. D. New York.

May 13, 1964.

Bass & Friend, Joseph Zalk, New York City, for plaintiff.

Kenyon & Kenyon, New York City, for defendant.

ZAVATT, Chief Judge.

The plaintiff herein, International Biotical Corp., (hereinafter International), alleging design patent infringement and unfair competition by the defendant, Federated Department Stores, Inc. (hereinafter Federated), seeks an injunction, damages, an accounting for profits, costs and reasonable attorneys' fees and the surrender for destruction of all the allegedly infringing materials. The case is now before this court on International's motion, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction pending the final hearing and determination of this action.

International is the assignee of design patent No. 190,009 issued March 28, 1961, on a combined massager and infra-red heat lamp which it has manufactured and sold since 1959 under the trade name, Infra-Massage. Federated, a large retail organization with numerous outlets, has recently introduced to the public a similar device under the trade name Pollenex Deep Heat Massager. These two devices have a certain resemblance, perform the same function and retail at the same price.

It is unnecessary at this time to determine the validity of International's design patent or to ascertain whether such patent, if valid, has been infringed by Federated. This patent, issued in 1961, has never been adjudicated. Nor is there any evidence that the members of the trade or the public at large have acquiesced to this patent. In its recent decision in Tempo Instrument, Inc. v. Logitek, Inc., 229 F.Supp. 1 (E.D. N.Y.1964), this court noted that:

> "Under such circumstances the cases in this Circuit leave no doubt that a preliminary injunction will not issue for this alleged infringement. As was said in Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608, 610 (S.D.N.Y.1961):
>
>> " 'It is well established that a preliminary injunction will not issue for patent infringement unless the validity of the patent is clear and beyond question. * * * The issuance of letters patent, standing alone, is not sufficient to support such drastic relief.'
>
> "See White v. Leanore Frocks, Inc., 120 F.2d 113 (2d Cir. 1941) (per curiam); Rosenberg v. Groov-Pin Corp., 81 F.2d 46 (2d Cir. 1936); Singer Mfg. Co. v. Better Service Sewing Mach. Co., 131 F.Supp. 146 (S.D.N.Y.1955); Stewart Stamping Corp. v. Westchester Products Co., 119 F.Supp. 92 (S.D.N.Y.1953)."

International argues the inapplicability of this well settled doctrine to the facts at bar and urges the statutory presumption of validity contained in 35 U.S.C. § 282. This presumption, however, is invoked primarily at a trial on the merits; on a motion for a preliminary injunction, "[t]he issuance of letters patent, standing alone, is not sufficient to support such drastic relief." Zandelin v. Maxwell Bentley Mfg. Co., supra. The cases relied upon by International do not dissuade this court from refusing to enjoin the infringement of their unadjudicated patent. In Steinfur Patents Corp. v. Iceland Fur Dyeing Co., 41 F.2d 948 (E.D. N.Y.1930), Judge Byers granted a preliminary injunction only after he had noted at the outset of his decision that the plaintiff's patents had been adjudicated and found valid. Although United States Plywood Corp. v. Zeesman Plywood Corp., 84 F.Supp. 78 (S.D.Cal. 1949) may indicate that this rule is relaxed somewhat in the Ninth Circuit, the case of P. L. & M. Co. v. Ballagh, 52 F. 2d 700, 701 (S.D.Cal.1931) indicates that even there "the rule is well established that except in extraordinary cases, a preliminary injunction should not issue in a patent infringement suit where there has been no adjudication of the validity of the patent." On facts inapplicable to the instant case, the court there found the record to present "an extraordinary situation" and issued the preliminary injunction.

Without conceding the existence of this rule, International argues that it "has lost much of its vitality and should be discarded, if it ever existed, in the light of the recent Supreme Court decisions in Sears, Roebuck & Co. v. Stiffel Company, 84 S.Ct. 784 (1964) and Compco Corp. v. Day-Brite Lighting, Inc., 84 S. Ct. 779 (1964)." In substance, the plaintiff argues that since these two cases have limited the basis upon which the courts may grant protection under the doctrine of unfair competition in cases where patent or copyright protection is unavailable, the courts should, therefore, broaden the scope of protection previously given in patent and copyright actions. Although this court does not agree with the argument thus proffered by In-

ternational, suffice it to say that if this Circuit is to discard a rule established by our Court of Appeals, the decision to do so must emanate from that forum.

International further contends that it is entitled to a preliminary injunction against Federated's allegedly unfair competition. It recognizes the fact that Sears, Roebuck & Co. v. Stiffel, Co., supra, and the companion case of Compco Corp. v. Day-Brite Lighting, Inc., supra, have limited the scope of such actions, but maintains that it falls within an exception drawn therein by the Court. In the Sears, Roebuck case the Court held that "because of the federal patent laws a State may not, when the article is unpatented and uncopyrighted, prohibit the copying of the article itself or award damages for such copying." 376 U.S. at 232, 84 S.Ct. at 789. It noted, however, that "a State may, in appropriate circumstances, require that goods, whether patented or unpatented, be labeled or that other precautionary steps be taken to prevent customers from being misled as to the source, just as it may protect businesses in the use of their trademarks, labels, or distinctive dress in the packaging of goods so as to prevent others, by imitating such markings, from misleading purchasers as to the source of the goods." *Ibid.*

The cases in this Circuit have long applied a similar rule, limiting relief to instances where the defendant has by his acts misled the consumer into purchasing an article in the mistaken belief that it was made by someone else, or where the defendant has participated in some deceptive practices, such as "palming off" his goods as those of another. See, e. g., Hygienic Specialties Co. v. H. G. Salzman, Inc., 302 F.2d 614 (2d Cir. 1962); Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2d Cir. 1959); Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299 (2d Cir. 1917). In American-Marietta Co. v. Krigsman, 275 F.2d 287, 289 (2d Cir. 1960), Judge Hand succinctly described the doctrine which prohibits one manufacturer from copying the non-functional aspects of a product so as to mislead the public into believing that it is purchasing the original product:

"If the goods have certain features that have no significance as to the provenance of the goods, yet have come to have a 'secondary meaning' which may mislead buyers into supposing that they come from a source on which the buyers rely, those features may not be copied. That is the doctrine of 'non-functional' copying, and is limited to those features of the original goods that are not in any way essential to their use. If in addition to being 'non-functional' these features have indeed come to signify origin in the minds of buyers, a second comer in the field will be forbidden to incorporate those features into the design of his own wares; the chance that this will deflect buyers who would otherwise buy of the putative other source cancels the second comer's privilege of reproducing the original, which he has in common with the public at large."

The plaintiff's device incorporates a curved pistol grip handle which is blended into a rounded casing containing the vibrator and heating element. A switch, located at the top of the rounded casing, permits the user to utilize either or both of the heating and vibrating elements. Its device also contains several decorative cross lines at the end of its curved handle and a fluting at the base of the casing. The defendant's device has a straight, squared off handle attached to its casing. Although it too has a round casing it is not curved and has a relatively flat top upon which the switch is located. The handle is not blended into the casing as in plaintiff's device nor is it streamlined in appearance. It contains no decorative cross lines and the grip is not contoured. Similarly, the base of defendant's casing contains none of the fluting which appears on plaintiff's product.

International has failed to show that any feature of its device has acquired a "secondary meaning" which identifies the product as the plaintiff's. Moreover, it

is the opinion of this court that the defendant's product contains none of the nonfunctional features to be found in the Infra-Massage device, *i. e.*, the streamlined, pistol grip handle; the decorative lines which appear at the end of that handle; the curved casing and the fluting which appears at the base thereof. Furthermore, the plaintiff has failed to give any instance of consumer confusion which would justify relief. It has submitted an affidavit of a sales representative who states that, at a recent trade show, a number of persons, apparently tradespeople, "believed that the Pollenex device was manufactured by the manufacturer of Infra-Massage." This statement is hardly sufficient evidence upon which to predicate the necessary finding of a chance of consumer confusion.

International also seeks relief on the basis of a demonstration that some of Federated's devices are sold in a plain, unprinted box bearing no identification of origin but only the marking "HM 10", whereas International's devices are sold in a printed box (presumably identifying International) with the marking "HM 4." Its mere allegation that the defendant has chosen such a container in order to confuse the consuming public, is not, by itself, a sufficient ground for this drastic remedy. The letters "HM" obviously represent "Heat Massager" and it is quite possible that Federated, marketing a product known as the "Pollenex Deep Heat Massager" considers this to be an appropriately descriptive container. In further derogation of any claim of "palming off" is the fact that the handle of defendant's device bears the words "Pollenex Deep Heat Massager" in large letters running along its entire length.

The plaintiff has failed to show either secondary meaning or any of the predatory practices which have moved the courts of this State and Circuit to grant relief. See Norwich Pharmacal Co. v. Sterling Drug, Inc., supra, and cases cited therein. Accordingly, the plaintiff's motion for a preliminary injunction is denied and the temporary restraining order dated March 20, 1964, is hereby vacated.

Settle an order consistent herewith on or before ten (10) days from the date hereof.