**The H. J. ASHE COMPANY, Inc.,**
**Plaintiff,**

v.

**The BRIDGEPORT METAL GOODS**
**MANUFACTURING COMPANY,**
**Defendant.**

**No. 66 Civ. 3296.**

United States District Court
S. D. New York.

May 23, 1967.

Joseph Winston, New York City, for plaintiff.

Remsen, Millham, Bowdish & Spellman, New York City, for defendant, Armand Cifelli, of Wooster, Davis & Cifelli, Bridgeport, Conn., of counsel.

## MEMORANDUM

FRANKEL, District Judge.

In this action plaintiff seeks a declaration that defendant's United States Patent No. 3,252,733 and United States Design Patent No. D 203,517, both of which relate to a molded plastic hand lantern, are invalid, or, if valid, not infringed by the hand lanterns distributed and sold by plaintiff. Defendant has counterclaimed for infringement and unfair competition, and now moves preliminarily to enjoin plaintiff from making, using or selling its allegedly infringing lanterns.*

The application for the defendant's patent was filed on November 17, 1964, and granted on May 24, 1966. The patent has not been adjudicated.

---

* As the parties treat it, the dispute at this stage centers on the mechanical patent, No. 3,252,733, and this memorandum will, accordingly, deal with the problem in terms of that patent alone.

Generally described, defendant's claimed invention "relates to an electric hand lantern * * * which employs a plurality of standard flashlight cells; which includes a simple unwired switch; and which may be molded of a nonconductive plastic material." The body of the lantern includes a rectangular battery chamber, a lens support bell, and a handle. Between the lens support bell and the battery chamber is an "internally extending shoulder," designed to minimize the possibility of breakage. Conductor means within the chamber contact opposite poles of two of the batteries, and the lamp is positioned so that one of its terminals is electrically connected to the remaining pole of one of the batteries. The lamp positioning means includes a conductive portion in contact with the other terminal of the lamp. This conductive portion is electrically interconnected to the remaining pole of one of the batteries by an L-shaped metallic contact strip. The L-shaped contact strip is engaged by a sliding switching strip which may be moved by pushing the switch button mounted on the outside of the body. When the switch button is slid forward, the nose of the switching strip advances against the conductive member, thereby closing the electrical connection, completing the circuit, and lighting the lamp.

According to the affidavits of Arthur H. Moore and Joseph G. Bacevius, defendant's vice president and industrial designer and co-inventors of the patented lantern, defendant, in late 1963, "recognized the need for a high illumination hand lantern similar in construction to the popular molded plastic body flashlight." The lanterns being marketed at the time contained relatively heavy and expensive 6-volt square cells, required a complicated wiring and switching system, and lacked any shock-resistance qualities. They retailed for approximately $2.50 to $2.75.

After experimenting with 6-volt square cells, defendant decided to design a lantern "which could accommodate ordinary 1½-volt D-cell batteries which are readily available to the consumer." Four of these D-cell batteries have the same intensity as one 6-volt square cell, but cost anywhere from 20 to 45 cents less, and can be placed in a narrower, lighter, and less expensive body. Defendant also claims to have solved the "shock problem" by designing the body with the "shoulder" mentioned above.

Notwithstanding these alleged advances, it is clear that defendant's main claim of invention relates to what it terms its "unique switch construction" and, more particularly, to the "L-shaped contact strip which forms an electrical link from the negative pole of the lower row of batteries to the slidable switching strip." Bacevius Affidavit, p. 5. This, in defendant's view, is "a new element, not known to the prior art * * *." Ibid.

In affidavits submitted by Edmund M. Squire, an electrical engineer and patent attorney, and S. Stephen Baker, plaintiff's patent counsel, plaintiff contends that defendant's patent is invalid because it lacks invention, would have been obvious to anyone skilled in the art, and is fully anticipated by the prior art.

■ As defendant recognizes in its memorandum, "preliminary injunctions are not lightly granted." Indeed, in cases of alleged patent infringement "* * * a preliminary injunction will not issue * * * unless the validity of the patent is clear and beyond question." Zandelin v. Maxwell Bentley Mfg. Co., 197 F.Supp. 608, 610 (S.D. N.Y.1961). Moreover, the traditional reluctance to restrain an alleged infringer is even greater when the patent or patents in suit have not been adjudicated. See International Biotical Corp. v. Federated Dept. Stores, Inc., 229 F. Supp. 528 (E.D.N.Y.1964); Tempo Instrument, Inc. v. Logitek, Inc., 229 F. Supp. 1 (E.D.N.Y.1964).

■ In an attempt to satisfy these stringent standards, defendant relies primarily on "secondary considerations," cf. Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)

—the statutory presumption of validity and alleged "acquiescence" by people in the industry, including the plaintiff. Mainly in response to plaintiff's strong attacks leveled directly at the patent, defendant also undertakes to make some showing that it has met the standards of invention. The showing in both aspects is plainly insufficient for the granting of a preliminary injunction.

I.

■ 1. It is perfectly obvious that the statutory presumption of validity is at best a rudimentary beginning of the strong demonstration required for a preliminary restraint like the one defendant seeks. See White v. Leanore Frocks, Inc. 120 F.2d 113 (2d Cir. 1941); Zandelin v. Maxwell Bentley Mfg. Co., supra. If the rule were otherwise, it would be difficult to account for the host of cases denying such motions based upon unadjudicated patents.

Accepting *arguendo* defendant's contention that the presumption should be enough to justify preliminary relief when the only prior art cited against the patent has been considered by the Patent Office, it is not altogether clear that the case in its present posture fits defendant's theory. Of the three patents plaintiff relies on to show anticipation, only two were cited as references by the examiner. The third, the Kott patent, which plaintiff claims anticipates defendant's "unique" switching mechanism, was not cited in the Patent Office. However, defendant insists that Kott may not be considered part of the prior art.

Although the Kott patent was not issued until July 19, 1966, some six months after the issuance of the patent in suit, the Kott application was filed on March 23, 1964, almost eight months prior to the filing of defendant's application. Conceding that Kott was a co-pending application like the one considered part of the prior art by the Supreme Court in Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965), defendant maintains that its invention was completed prior to March 23, 1964, and, therefore, that 35 U.S.C. § 102(e) precludes consideration of the Kott patent. The only evidence offered to support this claim is the affidavit of Joseph G. Bacevius, one of the co-inventors.

With a kind of airy vagueness raising at least as much doubt as it supposedly dispels, that affidavit (p. 2) says the "inventive activity * * * was initiated around the end of 1963 * * *." Then, after recounting assertedly extensive and expensive experimental efforts, the affiant says blandly (p. 4): "We completed our invention * * * prior to March 23, 1964." The total effect is not impressive.

■■ In view of the heavy burden a party must meet to establish a date of invention earlier than the date of application, United Shoe Machinery Corp. v. Brooklyn Wood Heel Corp., 77 F.2d 263, 264 (2d Cir. 1935), and the "fundamental principle * * * that a pre-filing date of invention may not be established by the inventor's uncorroborated testimony alone," Rooted Hair, Inc. v. Ideal Toy Corp., 329 F.2d 761, 767 (2d Cir.), cert. denied, 379 U.S. 831, 85 S.Ct. 63, 13 L.Ed.2d 40 (1964), the court cannot exclude the Kott patent from consideration on this motion. And this factor alone raises grave doubts about the validity of the patent in suit.

■ 2. Although it is perhaps true, as defendant urges, that widespread industry acquiescence may be considered the equivalent of an adjudication, Rosenberg v. Groov-Pin Corporation, 81 F.2d 46, 47 (2d Cir. 1936), the case made by defendant on this subject is not a compelling one.

■ Following the issuance of the patent, defendant sent infringement notices to four alleged infringers—Astra, Heller, Hipwell, and the plaintiff. Of the three companies which, in defendant's view, have agreed to "terminate infringement," only one, Astra, has in fact advanced any money in settlement, and the total amount of this payment is $1,000.

While Heller is said to have agreed to terminate infringement, no mention of any payment is made. In negotiations with the defendant, Hipwell has offered to redesign its lantern and pay royalties of $.02 each on its original lantern. No agreement has as yet been reached, and defendant offers no estimate of the total payment it expects from Hipwell.

In view of the high cost of patent litigation, the "acquiescence" shown by defendant is trivial. Cf. Kleinman v. Kobler, 230 F.2d 913, 914 (2d Cir.) cert. denied, 352 U.S. 830, 77 S.Ct. 44, 1 L.Ed. 2d 51 (1956). It falls far short of the "considerable degree of acquiescence" demonstrated in W. A. Sheaffer Pen Co. v. Worth Featherweight Pen Co., 41 F.2d 820, 821 (S.D.N.Y.1930), upon which defendant relies.

■ 3. Defendant claims that the validity of its patent is indicated by the fact that plaintiff, after receipt of an infringement notice, redesigned its lantern. While defendant sees this redesign as a tacit acknowledgment of the validity of the patent in suit and its infringement by the plaintiff, plaintiff asserts that the motive for its redesign was to improve the switching mechanism.

Even assuming that plaintiff originally accepted defendant's patent as valid, it certainly does not do so now. The original admission, if there was one, is at most "a circumstance not to be disregarded upon a motion for a preliminary injunction * * *." Belding Heminway Co. v. Future Fashions, 143 F.2d 216, 217 (2d Cir. 1944). It is, in the disputed circumstances of this case, scarcely a powerful factor favoring defendant's motion.

## II.

Apart from the somewhat extraneous points defendant asserts—the presumption and supposed acquiescence—the materials before the court directed to the patent in suit weigh heavily against the defendant. Plaintiff has filed detailed, specific and persuasive affidavits generating grave doubts as to the validity of the patent. From the papers on hand, there is a substantially undisputed showing that all of the claimed structure, with the exception of the switch means, is anticipated by the Schotz patent, which also covers a hand lantern. The switch means is said to be fully anticipated by the Kott flashlight patent. Moreover, plaintiff's expert argues with considerable plausibility that defendant's "unique" L-shaped contact strip is nothing more than "an obvious mechanical expedient * * *;" he points out that since the route from the battery to the switch is L-shaped, the contact strip must necessarily be of the same configuration.

In response, defendant offers the affidavit of the co-inventor, Joseph G. Bacevius. While Mr. Bacevius describes his claimed invention, he makes no meaningful effort to refute plaintiff's arguments based on the Schotz and Kott patents. Indeed, Mr. Bacevius's assertion that Schotz and Kott do not anticipate is apparently based solely on the explanation of these patents provided by defendant's counsel.

## III.

Since the doubts raised about the validity of defendant's patent are sufficient to justify a denial of preliminary relief, it seems unnecessary to comment at length on the questions of infringement and irreparable injury. While plaintiff has not strenuously urged that its original lantern did not infringe, the question of whether its redesigned model infringes is not entirely free from doubt. Finally, although defendant has apparently borne a substantial amount of research and development expense and has seen its sales decline, there is no claim that plaintiff will not be able to respond in damages should defendant ultimately prevail.

The motion for a preliminary injunction is denied.

It is so ordered.